COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, Powell and Senior Judge Clements
Argued at Richmond, Virginia


MICHAEL DWAYNE VAUGHN

                                                                OPINION BY
v.         Record No. 2564-07-3                    JUDGE RANDOLPH A. BEALES
                                                                MARCH 31, 2009
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF HENRY COUNTY
                              David V. Williams, Judge

              S. Jane Chittom, Appellate Defender (Office of the Appellate
              Defender, on briefs), for appellant.

              Josephine F. Whalen, Assistant Attorney General II (Robert F.
              McDonnell, Attorney General, on brief), for appellee.


       Michael Dwayne Vaughn (appellant) was convicted by the trial court of one count of petit

larceny, in relation to events on August 7, 2006, and one count of grand larceny, in relation to

events on July 26, 2006.  On appeal, he argues that the trial court erred in denying his motion to

suppress items seized on August 8, 2006.  He contends that police violated his Fourth Amendment

rights when they seized the items from his backyard without a warrant.  After careful review of the

record in this case, we find the trial court did not err, and we affirm appellant's grand larceny

conviction.[1]

_____

       [1] Appellant's notice of appeal referenced both his grand larceny conviction and his petit
larceny conviction, even though he had pled guilty to petit larceny.  Simultaneous with the filing
of the petition for appeal of his grand larceny conviction, appellant withdrew his appeal of the
petit larceny conviction.

I. BACKGROUND

The following facts are relevant to appellant's motion to suppress. After business hours on July 26, 2006, and August 7, 2006, aluminum wheels, radiators, and condensers were stolen from West Imports, a Henry County scrap metal business. The thefts were captured on the business' videotape surveillance system. No one at West Imports could identify the perpetrator who was observed committing larceny on the July 26 videotape, but the business' owner, George Westmoreland, believed he recognized someone named "Michael or Mike" on the videotape from August 7. 2006. This individual had previously sold scrap metal to Westmoreland on several occasions. One of Westmoreland's employees, who also watched the August 7 videotape, recognized the thief as his neighbor on Jones Ridge Road.

Westmoreland contacted the police early on the morning of August 8, 2006, and gave this information to Sergeant Troy Easter. Sergeant Easter, after viewing the August 7 videotape, then went to appellant's home on Jones Ridge Road, approximately two miles from the business. When he arrived at the home between 7:00 a.m. and 8:30 a.m.,[2] Sergeant Easter observed numerous car parts and some apparently inoperable vehicles sitting in the yard around the house. The house had no fencing around it, and the property was not posted with any "no trespassing" signs.

Sergeant Easter approached the front door and knocked, but no one answered. The sergeant then walked around the left side of the house and knocked on a side door. No one answered. Sergeant Easter then walked to the back of the house to see "if anybody might be around the back." As he walked into the backyard, he observed wheels and radiators like those stolen from West Imports sitting both in the open and behind a red shed situated on the opposite side of the yard,

---

[2] Westmoreland testified that he arrived at his business at around 7:00 a.m. on August 8, 2006. Given the testimony of Investigator Craig O'Der regarding the length of the police station interview, appellant was at the police station by 8:30 a.m. Therefore, Sergeant Easter arrived at appellant's home sometime between 7:00 a.m. and 8:30 a.m.

approximately twenty-five to thirty yards behind the house. The backyard was cluttered with a variety of other car parts. The red shed was the only structure in the yard.

Sergeant Easter then returned to the front of the house in order to call Westmoreland from his patrol car and ask him to come to the house on Jones Ridge Road. At this point, appellant came out of the house. When Westmoreland arrived at the house, he identified the tires, radiators, and condensers in the backyard as the stolen items.

Appellant moved to suppress the evidence of the stolen goods and any derivative evidence, including appellant's subsequent confession to the July 26 theft and the August 7 theft, contending that Sergeant Easter conducted a warrantless search of his property in violation of the Fourth Amendment. The trial court found that Sergeant Easter was lawfully in appellant's backyard trying to see if appellant was home that morning so as to question him when Sergeant Easter observed the stolen items in plain view. The trial court ruled that the plain view doctrine was applicable in this case, and, therefore, the court denied appellant's suppression motion. This appeal followed.

## II. ANALYSIS

> In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial. The burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. We will review the trial court's application of the law de novo.

Malbrough v. Commonwealth, 275 Va. 163, 168-69, 655 S.E.2d 1, 3 (2008).

The plain view doctrine is an exception to the general rule that warrantless searches and seizures are presumptively unreasonable. Harris v. Commonwealth, 241 Va. 146, 152, 400 S.E.2d 191, 195 (1991). In Horton v. California, 496 U.S. 128 (1990), the United States Supreme Court articulated the essential predicates for application of the plain view doctrine, which are 1) that the officer did not violate the Fourth Amendment in arriving at the place from

which the evidence could be plainly viewed, 2) that the incriminating character of the evidence must be immediately apparent, and 3) that the officer have a lawful right of access to the object itself.  Id. at 136-37; see also Harris, 241 Va. at 153, 400 S.E.2d at 195.

Appellant argues that the trial court erroneously applied the plain view doctrine here because appellant claims that Sergeant Easter was not lawfully located in a place from which the evidence could be seen when he entered appellant's backyard.  See Horton, 496 U.S. at 136.  Appellant claims that Sergeant Easter violated the Fourth Amendment before he saw the stolen items in plain view in appellant's backyard, which would preclude application of the plain view doctrine as explained in Horton.  Consequently, the central issue for us to resolve here is whether Sergeant Easter lawfully entered appellant's backyard prior to observing the stolen items, which were plainly visible to anyone standing in his position in the yard.  If Sergeant Easter lawfully entered appellant's backyard, then, because the stolen items were in plain view, the trial court properly denied the motion to suppress in this case.

The "'touchstone of the Fourth Amendment is reasonableness,'" and bright-line rules are to be eschewed in this area of the law in favor of "'the fact-specific nature of the reasonableness inquiry.'"  Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224 (2007) (quoting Alvarez v. Montgomery Cty., 147 F.3d 354, 358 (4th Cir. 1998)).  Reasonableness under the Fourth Amendment "is determined 'by assessing, on the one hand, the degree to which [the police action] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'"  United States v. Knights, 534 U.S. 112, 118-19 (2001) (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)).  Therefore, a reviewing court on appeal must balance "the individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers."  Stanley v. Commonwealth, 16 Va. App. 873,

875, 433 S.E.2d 512, 513 (1993) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)). For the reasons that follow, we hold that Sergeant Easter's entry into appellant's backyard was reasonable under the totality of the circumstances.

As our Supreme Court recently discussed in Robinson:

> a number of federal and state courts have held that a resident of a dwelling impliedly consents to a police officer entering the curtilage to contact the dwelling's residents. This implied consent has the effect of deeming such an entry into the curtilage a reasonable intrusion into an area otherwise protected by an expectation of privacy under the Fourth Amendment. See, e.g., United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006); United States v. Taylor, 90 F.3d 903, 909 (4th Cir. 1996); Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964); State v. Christensen, 953 P.2d 583, 587 (Idaho 1998); City of Eugene v. Silva, 108 P.3d 23, 27 (Or. Ct. App. 2005). Implied consent can be negated by obvious indicia of restricted access, such as posted "no trespassing" signs, gates, or other means that deny access to uninvited persons. See, e.g., Christensen, 953 P.2d at 587-88.

Robinson, 273 Va. at 34-35, 639 S.E.2d at 221-22.

Appellant acknowledges the applicability of the implied consent doctrine, which is also referred to as the "knock and talk" doctrine. See, e.g., United States v. Spotted Elk, 548 F.3d 641, 655 (8th Cir. 2008). However, appellant construes Robinson to permit "only an entry on to the pathway or sidewalk leading to the front door" of a residence. Appellant contends that Sergeant Easter exceeded the scope of implied consent when he deviated from the path to his front door. We disagree.

Robinson did not establish that the scope of implied consent is limited to traversing the most direct path to the front door of a dwelling without deviation, even though the defendants in that case urged our Supreme Court to adopt such a bright-line rule. In addition, in its decision, the Supreme Court also declined to adopt another bright-line rule likewise advocated by appellant here that any deviation from the sole purpose of contacting the resident precludes application of the implied consent doctrine in all cases. See Robinson, 273 Va. at 38, 639 S.E.2d

at 224 (holding that implied consent is not necessarily "limited in all cases to entry onto the premises to 'knock and talk' to the resident," and application of the implied consent doctrine is not necessarily precluded by "any deviation from this purpose"). In light of our Supreme Court's rejection in <u>Robinson</u> of bright-line rules, we find persuasive in this situation the analysis from numerous appellate courts holding that law enforcement officers may permissibly deviate from the path to the front door in appropriate circumstances under the implied consent doctrine. <u>See, e.g.</u>, <u>United States v. Hammett</u>, 236 F.3d 1054, 1060 (9th Cir. 2001) ("[A police] officer may, in good faith, move away from the front door when seeking to contact the occupants of a residence."); <u>United States v. Raines</u>, 243 F.3d 419, 421 (8th Cir. 2001) (recognizing "that law enforcement officers must sometimes move away from the front door when attempting to contact the occupants of a residence"); <u>State v. Fisher</u>, 154 P.3d 455, 474 (Kan. 2007) ("We also acknowledge that if no one answers the knock, as here, the officers can be justified in knocking on more doors.").

Appellant argues in the alternative that, assuming Sergeant Easter was not limited to contacting him by means of the front door, the implied consent given to Easter extended only to appellant's side door and precluded Easter from lawfully entering appellant's backyard. The Supreme Court's holding in <u>Robinson</u> does not govern this issue, as the Court considered there only the trial court's express finding that the officer had probable cause before entering the defendants' backyard. 273 Va. at 40, 639 S.E.2d at 225. In addition, appellant provides no coherent rationale for his position that Sergeant Easter was required to cease his efforts to contact appellant after he knocked on the side door. Appellate courts from other jurisdictions have held that law enforcement officers may enter the back area of the residence while executing the "knock and talk" procedure to attempt to contact a resident after initially receiving no

response at the front door.[3]  See, e.g., United States v. Gomez-Moreno, 479 F.3d 350, 356 (5th Cir. 2007) ("[T]he officers could have knocked on the front door to the front house and awaited a response; they might have then knocked on the back door or the door to the back house."); Hammett, 236 F.3d at 1060 (Ninth Circuit upholding the propriety of the officers "circling [the defendant's] house" in an attempt to find another door); United States v. Anderson, 552 F.2d 1296, 1300 (8th Cir. 1977) (holding the officer's movement to the rear of the defendant's house after receiving no answer at the front door was lawful); United States v. Bradshaw, 490 F.2d 1097, 1100 (4th Cir. 1974) ("[W]e cannot say that Agent Williams exceeded the scope of his legitimate purpose for being there [to contact the resident] by walking around to the back door when he was unable to get an answer at the front door.").  Similarly, Sergeant Easter's entry into appellant's backyard as part of his attempt to contact appellant was reasonable under the totality of the circumstances.

Here, Sergeant Easter testified that he observed "junked vehicles, a lot of automotive parts and stuff all in the front and then sides [of the yard], basically everywhere" when he arrived at appellant's residence.  He attempted to contact appellant at the front door.  Receiving no response, he then tried the side door of the residence.  When still nobody answered, Sergeant Easter proceeded to the back of the house to see "if anybody might be around the back."

Viewing the evidence in the light most favorable to the Commonwealth, as we must on appeal since the Commonwealth prevailed in the trial court, Sergeant Easter's testimony established that he suspected that appellant or some other occupant of the home was present at

---

[3] Based on our review of photographs of appellant's home admitted into evidence by the trial court, it appears that there was no back door to appellant's home.  However, there was no testimony or other evidence adduced at trial indicating that Sergeant Easter knew appellant's home lacked a back door prior to entering the backyard.  Furthermore, it was not unreasonable for Sergeant Easter to suspect that someone might be in the back, given the presence of numerous old automobiles and automobile parts in appellant's yard.

- 7 -

the time, which was a reasonable impression under the circumstances.  First, Sergeant Easter arrived at appellant's residence early enough in the day for a reasonable officer to believe that the occupant or occupants might not yet have left for work.  Second, the presence of junked vehicles and automotive parts "basically everywhere" on appellant's property could lead a reasonable officer to believe that appellant operated a junk yard out of his home, thereby making it reasonable to conclude that appellant would be at the home/junk yard.  Third, while several cars appeared inoperable, there were also cars parked in the driveways around the house that appeared functional, suggesting that someone was at home.  Proceeding into the backyard was a reasonable step directed towards initiating a conversation with appellant or any other occupant of the home.  See Hardesty v. Hamburg Township, 461 F.3d 646, 654 (6th Cir. 2006) (holding that, "where knocking at the front door [wa]s unsuccessful in spite of indications that someone [wa]s in or around the house, . . . proceeding around the house and onto the back deck was a reasonable step, and that step was directed towards initiating a conversation with the person or persons in the house"); Alvarez, 147 F.3d at 356 (Fourth Circuit holding that "the Fourth Amendment does not prohibit police, attempting to speak with a homeowner, from entering the backyard when circumstances indicate they might find him there").

In conjunction with the reasonable inference that appellant might have been home at the time, we find it significant that the sergeant did not encounter any "no trespassing" signs, fencing, or other impediments indicating that his presence in the backyard was unwelcome.  Anyone, police officer or local resident, could enter the backyard without interference or impediment.  Thus, nothing negated the implied consent here to enter the backyard to contact appellant.  See Robinson, 273 Va. at 34, 639 S.E.2d at 222 (noting that "[i]mplied consent can be negated by obvious indicia of restricted access").

It is clear that, under the totality of the circumstances in this case, Sergeant Easter's entry into appellant's backyard was not an "arbitrary government intrusion[]." Stanley, 16 Va. App. at 874, 433 S.E.2d at 513. It would turn logic on its head and potentially create a chilling effect upon otherwise permissible police investigations of criminal activity to hold that an officer must cease his investigation and refrain from entering a backyard when the occupant has not answered the front or side doors even though there are indications the occupant might be home, and the occupant has not negated implied consent by restricting access to the backyard. Given the facts of this case, Sergeant Easter's attempt to contact appellant by entering the backyard did not extend beyond the constraints of the implied consent doctrine (and "knock and talk" analysis) recognized in Robinson, and, consequently, the sergeant did not infringe appellant's Fourth Amendment rights.

Because the sergeant, under the circumstances discussed above, was lawfully in appellant's backyard trying to contact appellant when he observed the stolen items, which were in plain view as he stood there, the trial court did not commit reversible error. Accordingly, given these facts, we conclude that the trial court correctly denied appellant's motion to suppress.

III. CONCLUSION

For the foregoing reasons, we affirm appellant's grand larceny conviction in connection to the events on July 26, 2006.

                                                                                            Affirmed.