COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Alston
Argued at Richmond, Virginia


TYRONE ANTHONY CAULS, JR.

                                                              OPINION BY
v.        Record No. 1977-08-2                    JUDGE ROBERT J. HUMPHREYS
                                                          OCTOBER 20, 2009

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                             Joseph J. Ellis,[1] Judge

          Elizabeth K. Hutson, Assistant Public Defender (Office of the
          Public Defender, on brief), for appellant.

          Joshua M. Didlake, Assistant Attorney General (William C. Mims,
          Attorney General, on brief), for appellee.


      Tyrone Anthony Cauls, Jr. ("Cauls") appeals his conviction for possession of a Schedule

I or II controlled substance, in violation of Code § 18.2-250.  On appeal, Cauls argues that the

trial court erred in denying his motion to suppress the evidence seized from his pants pocket.

Cauls claims the trial court erred for two reasons.  First, Cauls contends that he was

"unreasonably seized when he was ordered to comply with the deputies during the protective

sweep."  Second, Cauls contends that the search of his pants pocket did not fall within the plain

view exception to the warrant requirement.  For the following reasons, we disagree that Cauls

was seized in violation of his Fourth Amendment right to be free from an unreasonable seizure.

Nevertheless, we agree with Cauls' second contention and, therefore, reverse his conviction.

---

[1] The motion to suppress hearing was held before Judge David H. Beck.

BACKGROUND

"On appeal from a trial court's denial of a motion to suppress, we must review the evidence in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences fairly deducible from it." Sabo v. Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002) (citing Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)). So viewed, the evidence was as follows.

On November 16, 2007, Deputy J.M. Woodard ("Woodard") of the Spotsylvania Sheriff's Office executed an arrest warrant for Alexis Satkin ("Satkin") at her residence in Spotsylvania County. When Satkin answered the door, Woodard informed her that she was under arrest for a probation violation; however, Woodard allowed Satkin to reenter the residence to put on more appropriate clothing.[2] Because she was under arrest, Woodard accompanied Satkin into the residence. In the front room, Woodard observed a digital scale and a "white powder residue" on the kitchen table. Woodard testified that in his training and experience the "white powder residue" was consistent with cocaine. At that point, Woodard asked Satkin for consent to search the entire residence. She refused. Woodard then decided to obtain a search warrant.

While he waited for Satkin to get dressed, Woodard conducted a protective sweep of the residence to determine whether there were any threats to the deputies' safety. In the bedroom, Woodard discovered Cauls lying in bed watching television. Woodard ordered Cauls to show his hands. Cauls complied. Woodard then explained to Cauls that they were obtaining a search warrant for the residence and that he was free to leave. Cauls informed Woodard that he was only wearing a pair of boxer shorts. When Woodard asked if Cauls wanted a pair of pants, he replied, "Yes." Woodard observed a pair of men's pants lying on the floor next to the bed and

---

[2] Satkin was only wearing a tee shirt at the time.

asked Cauls if they belonged to him. Cauls said they did. As Woodard picked up the pants to hand them to Cauls, he observed the knotted and frayed end of a plastic baggy protruding from the watch pocket. However, Woodard could not see the contents of the baggy. Nevertheless, Woodard removed the baggy from the watch pocket and saw that it contained crack cocaine. Woodard then placed Cauls under arrest.

Prior to trial, Cauls made a motion to suppress the evidence seized from his pants pocket. The trial court denied his motion. Thereafter, Cauls entered a conditional plea of guilty in which he retained the right to appeal the trial court's denial of his motion to suppress. This appeal followed.

ANALYSIS

"An accused's claim that evidence was seized in violation of the Fourth Amendment to the United States Constitution presents a mixed question of law and fact that we review *de novo* on appeal." Grandison v. Commonwealth, 274 Va. 316, 320, 645 S.E.2d 298, 300 (2007). "In making such a determination, we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." McCain v. Commonwealth, 275 Va. 546, 551-52, 659 S.E.2d 512, 515 (2008). "The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error." Id.

I. Cauls' "Seizure"

Cauls argues that he was "unreasonably seized" when Woodard picked up his pants from the floor because a reasonable person would not have felt free to leave the residence. Cauls claims that this unconstitutional seizure tainted what occurred immediately thereafter. We disagree.

"A person is 'seized' within the meaning of the Fourth Amendment if, under the circumstances presented, a reasonable person would believe that he was not free to leave the scene of an encounter with the police." McLellan v. Commonwealth, 37 Va. App. 144, 151, 554 S.E.2d 699, 703 (2001) (citing United States v. Mendenhall, 446 U.S. 544, 554 (1980); Cochran v. Commonwealth, 258 Va. 604, 608, 521 S.E.2d 287, 289 (1999), cert. denied, 529 U.S. 1075 (2000); Parker v. Commonwealth, 255 Va. 96, 101, 496 S.E.2d 47, 50 (1998)). "Thus, a seizure occurs when a law enforcement officer, by physical force or some display of authority, restrains in some manner a citizen's freedom of movement. Only when such restraint is imposed is there a basis for invoking Fourth Amendment safeguards." Id. at 152, 554 S.E.2d at 703 (citations omitted). Here, no such restraint was imposed upon Cauls.

Woodard properly executed an arrest warrant for Satkin at her residence. Incident to her arrest, Woodard was entitled to conduct a "protective sweep" of the residence to ensure his own safety and the safety of the other deputies, so long as "it [was] narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Maryland v. Buie, 494 U.S. 325, 327 (1990). During this sweep, Woodard encountered Cauls lying in bed. After confirming that Cauls was not a danger, Woodard told Cauls that he was in the process of obtaining a search warrant for the residence and that Cauls was free to leave. However, Cauls indicated that he was only wearing a pair of boxer shorts. Woodard asked Cauls if he wanted a pair of pants, to which he replied, "Yes." Woodard then identified a pair of male pants on the floor next to the bed and asked Cauls if they belonged to him. Again, Cauls responded, "Yes." Only when Woodard picked up the pants to hand them to Cauls, did he notice the plastic baggy protruding from the watch pocket.

Cauls contends that he was seized when Woodard "picked up [his] pants after he had been told that he was free to leave." However, Cauls overlooks the fact that he specifically

asked Woodard for a pair of pants and identified the pants on the floor as his own. By picking up the pants, Woodard did not restrain Cauls' movement through the use of physical force or a display of authority. Rather, Woodard merely responded to Cauls' specific request for his pants. "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" Davis v. Commonwealth, 37 Va. App. 421, 428, 559 S.E.2d 374, 377 (2002) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)). Woodard's conduct in this instance can hardly be described as an "arbitrary and oppressive interference" with Cauls' privacy or personal security, so as to invoke the protections of the Fourth Amendment. Cauls was told that he was free to leave and asked Woodard for his pants so that he could do so. Thus, Cauls was not "unreasonably seized" when Woodard complied with his request.

## II. The Application of the "Plain View" Doctrine

Alternatively, Cauls argues that the seizure of the plastic baggy constituted a search followed by a seizure and, thus, did not fall within the plain view exception to the warrant requirement. Our Supreme Court has said that "[t]he 'plain view doctrine' is an exception to the general rule that warrantless searches and seizures are presumptively unreasonable." Harris v. Commonwealth, 241 Va. 146, 152, 400 S.E.2d 191, 195 (1991). While this language is often quoted in the Commonwealth as the constitutional shorthand for the "plain view doctrine," it is somewhat misleading because it inaccurately summarizes the constitutional jurisprudence of the Supreme Court of the United States on the subject.

First of all, one of the fundamental characteristics of the "plain view doctrine" is that it is exclusively a *seizure* rationale. The doctrine only applies to seizures because, by definition, if a

- 5 -

police officer has a legal right to be in a place where he observes an item in plain view, no "search" takes place, and it is only the seizure of the item that implicates the Fourth Amendment. See Arizona v. Hicks, 480 U.S. 321, 326 (1987) ("It is well established that under certain circumstances the police may *seize* evidence in plain view without a warrant." (citing Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971) (plurality opinion)) (emphasis in original). This is so because "'[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.'" California v. Ciraolo, 476 U.S. 207, 213 (1986) (quoting Katz v. United States, 389 U.S. 347, 351 (1967)); see also Kyllo v. United States, 533 U.S. 27, 42 (2001); Florida v. Riley, 488 U.S. 445, 449-50 (1989); California v. Greenwood, 486 U.S. 35, 40-41 (1988); Dow Chemical Co. v. United States, 476 U.S. 227, 235-36 (1986); Air Pollution Variance Bd. of Colo. v. Western Alfalfa Corp., 416 U.S. 861, 865 (1974). Thus, contrary to the language quoted above from Harris, if an item is indeed in "plain view," the Fourth Amendment is not engaged unless and until the item is seized because no search has occurred.

Secondly, although often characterized as such, the plain view doctrine is *not* really a separate "exception" to the constitutional requirement that the seizure of an item must be supported either by a properly issued and executed warrant or some other properly applied exception to the warrant requirement, such as exigent circumstances. In fact, "plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle . . . that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" Coolidge, 403 U.S. at 468 (emphasis in original). As other jurists have noted, "[t]he hardest conceptual problem attending the plain view doctrine is to grasp that it is not a universal statement of the right of a policeman to seize after seeing something in open view; it is rather a limited statement of the right in one of several instances - following a

valid intrusion." Judge Charles E. Moylan, <u>The Plain View Doctrine: Unexpected Child of the</u>

<u>Great "Search Incident" Geography Battle</u>, 26 Mercer L. Rev. 1047, 1096 (1975).

> To that end, the United States Supreme Court has identified three requirements

>> for application of the plain view doctrine, which are 1) that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, 2) *that the incriminating character of the evidence must be immediately apparent*, and 3) that the officer have a lawful right of access to the object itself.[3]

<u>Vaughn v. Commonwealth</u>, 53 Va. App. 643, 648, 674 S.E.2d 558, 560 (2009) (emphasis added)

(citing <u>Horton v. California</u>, 496 U.S. 128 (1990)). Having previously determined that Woodard

was properly on the premises and that Cauls had not been seized in violation of his Fourth

Amendment rights, we must now determine whether the incriminating character of the plastic

baggy was immediately apparent. If "the police lack probable cause to believe that an object in

plain view is contraband without conducting some further search of the object -- i.e., 'if its

incriminating character [is not] immediately apparent,' . . . the plain-view doctrine cannot justify

its seizure." <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 375 (1993) (emphasis omitted) (quoting

<u>Horton</u>, 480 U.S. at 136).

Cauls argues that the incriminating character of the item seized from his watch pocket

was not immediately apparent to Woodard, because Woodard was only able to observe the

knotted end of the plastic baggy and not the baggy's contents. Thus, Cauls contends that

Woodard lacked "the requisite probable cause to reach into [Cauls'] pant's pocket and retrieve

the plastic bag." The Supreme Court of Virginia has consistently held that, under the plain view

doctrine, probable cause cannot be established "'solely on the observation of material which can

---

[3] Because we find the plain view doctrine inapplicable here, we need not and do not reach the issue of whether exigent circumstances existed, which would permit the seizure to be made in the absence of a warrant.

be used for legitimate purposes, even though the experience of an officer indicates that such material is often used for illegitimate purposes.'" Grandison, 274 Va. at 321, 645 S.E.2d at 300 (quoting Brown v. Commonwealth, 270 Va. 414, 420-21, 620 S.E.2d 760, 763 (2005)). Moreover, "[i]t is not sufficient probable cause to seize an item from inside the suspect's clothing if the officer has no more than an educated 'hunch' . . . that the item might be contraband." Cost v. Commonwealth, 275 Va. 246, 252, 657 S.E.2d 505, 508 (2008).

The facts of this case are analogous to those of Grandison and Cost. In Grandison, an officer conducting a pat down of Grandison observed "a folded dollar bill protruding from [his] watch pocket." Grandison, 274 Va. at 321, 645 S.E.2d at 300. The officer removed the dollar bill from Grandison's pocket because, based on his training and experience, he knew that drugs were frequently packaged in such a way. The officer found cocaine inside the dollar bill, and Grandison was convicted. However, the Supreme Court of Virginia reversed his conviction because the dollar bill was an object with a legitimate purpose and "[n]o other circumstances indicated criminal activity." Id. at 321, 645 S.E.2d at 300-01. Thus, the Court concluded that the officer lacked probable cause to remove the dollar bill from Grandison's pocket. Id.

In Cost, an officer approached Cost who was sitting in the passenger seat of a parked vehicle. After observing Cost reaching for his left pants pocket several times, the officer "told Cost to 'get away from' his pocket." Cost, 275 Va. at 249, 657 S.E.2d at 506. When Cost reached for his pocket again, the officer ordered him out of the vehicle. Id. The officer then conducted a pat down of Cost, during which he felt "numerous capsules." Id. Like Grandison, the officer removed the capsules from Cost's pocket because, based on his training and experience, he "knew" the capsules contained heroin. Id. at 250, 657 S.E.2d at 506. The officer found heroin in the capsules, and Cost was convicted. Again, the Supreme Court of Virginia reversed Cost's conviction noting that legal medications such as Motrin and Tylenol are

frequently packaged in capsule form. Id. at 254, 657 S.E.2d at 509. The Court reasoned that "the character of the capsules seized from Cost's pants pocket could not have been immediately apparent to Officer Davis as a result of the pat-down search." Id.

Like the officers in Grandison and Cost, Woodard had no more than an educated hunch that the plastic baggy in Cauls' pants pocket contained contraband. When he picked up Cauls' pants, Woodard observed the knotted and frayed end of a plastic baggy protruding from the watch pocket, but he was unable to see the baggy's contents. Based on his training and experience, Woodard concluded that the baggy likely contained narcotics. However, like the capsules in Cost and the dollar bill in Grandison, plastic baggies are often used for legitimate purposes that do not involve the packaging of narcotics. Thus, Woodard's observation of the plastic knot and fray, standing alone, could not provide him with probable cause because the object's incriminating character was not immediately apparent.

The Commonwealth argues that the "other circumstance[s] indicating criminal activity," such as Woodard's observation of the digital scale and "white powder residue" on the kitchen table of the residence, provided him with probable cause to seize the plastic baggy from Cauls' pocket. See Grandison, 274 Va. at 321, 645 S.E.2d at 300 (quoting Brown, 270 Va. at 420-21, 620 S.E.2d at 763). While we agree with the Commonwealth's assertion that the determination of whether or not probable cause exists depends on the totality of the circumstances, we disagree with its conclusion that probable cause existed in this case.

Cauls did not own or reside at the residence in question. Therefore, the only nexus between Cauls and the "circumstances indicating criminal activity" was his presence in the residence. The Supreme Court of Virginia dealt with a similar situation in Murphy v. Commonwealth, 264 Va. 568, 570 S.E.2d 836 (2002). In that case, Murphy was present in a residence when the police executed a search warrant. "The search warrant authorized the police

- 9 -

to search 'the entire residence' for 'marijuana, cocaine, cocaine base, heroin, scales, ledgers, logs, money, guns, phone bills, syringes and any other item that would be connected with the illegal sale and/or use of any other illegal narcotic or non-prescription drug.'" Id. at 571, 570 S.E.2d at 837. When the police entered the residence, they found Murphy and three other men inside. An officer detained Murphy and frisked him for weapons. During the frisk, the officer felt a large bulge in Murphy's pocket, which he sensed was a plastic baggy. Id. The officer removed the baggy from Murphy's pocket because, based on his training and experience, he believed the baggy contained marijuana. Id. The officer was correct, and Murphy was arrested and ultimately convicted. In reversing Murphy's conviction, the Supreme Court of Virginia stated:

> [The officer's] testimony established only that the character of the object as a plastic bag was immediately apparent from the "pat down" search, and that he knew from his training and experience that plastic bags often are used to package marijuana. This information was insufficient under the holding in Dickerson to establish probable cause to search Murphy's pocket because *Harvey's conclusion that the bag contained marijuana was not based on his tactile perception of the bag's contents. Rather, his sense of touch revealed only that there was a plastic bag in Murphy's pocket.* Thus, Officer Harvey lacked probable cause to seize the item from Murphy's pocket because the character of the bag's contents as contraband was not immediately apparent from the frisk.
>
> *Our conclusion that Officer Harvey did not have probable cause to seize the marijuana is not altered by the fact that Murphy was present in a residence that was the subject of a search warrant for illegal drugs. The record contains no evidence linking him to the suspected presence of those drugs.* Therefore, we hold that the trial court erred in denying Murphy's motion to suppress evidence of the controlled substances because those items were seized after Murphy was arrested illegally based on the search of his pocket without probable cause.

Id. at 574-75, 570 S.E.2d at 839-40 (emphasis added) (internal citations omitted); see also

Whitehead v. Commonwealth, __ Va. __, __ S.E.2d __ (Sept. 18, 2009) (holding that

Whitehead's mere status as a passenger in a vehicle on which a drug dog alerted, without evidence that he and the other passengers were engaged in a common enterprise involving criminal activity, did not provide the officers with probable cause to search Whitehead's person).

Like the officer in Murphy, Woodard's conclusion that the plastic baggy contained narcotics was not based on "his tactile perception of the bag's contents." Murphy, 264 Va. at 574, 570 S.E.2d at 839. Rather, his observation of the knot and fray only revealed that there was a plastic baggy in Cauls' pocket. Therefore, Woodard lacked probable cause to seize the baggy, because "the character of the bag's contents as contraband was not immediately apparent . . . ." Id. at 575, 570 S.E.2d at 839. Furthermore, the record contains no evidence, beyond his mere presence in the residence, linking Cauls to the digital scale or the "white powder residue" found on the kitchen table. Thus, Woodard's seizure of the bag was not supported by additional circumstances indicating Cauls' criminal activity.

CONCLUSION

For the foregoing reasons, we hold that the facts of this case do not support the application of the plain view doctrine, because the incriminating character of the plastic baggy's contents was not immediately apparent. Thus, the retrieval of the baggy from Cauls' pants pocket was an invalid seizure under the Fourth Amendment. Accordingly, we hold that the trial court erred in failing to suppress the evidence obtained from the seizure of the plastic baggy, and we reverse Cauls' conviction and remand for a new trial, if the Commonwealth be so advised.

Reversed and remanded.