COURT OF APPEALS OF VIRGINIA

Present:   Judges Causey, Raphael and Senior Judge Clements
Argued at Richmond, Virginia

SHAQUILL HENRY

MEMORANDUM OPINION[*] BY
v.        Record No. 0771-24-2        JUDGE JEAN HARRISON CLEMENTS
SEPTEMBER 30, 2025
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
M. Duncan Minton, Jr. Judge

Kelsey Bulger, Deputy Appellate Counsel (Virginia Indigent
Defense Commission, on briefs), for appellant.

Shelly R. James, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; Linda R. Scott, Senior Assistant
Attorney General, on brief), for appellee.


Upon his conditional guilty pleas, the trial court found Shaquill Henry guilty of

possession of a Schedule I or II controlled substance with intent to distribute and possession of a

controlled substance by a prisoner.  On appeal, Henry argues that the trial court erred in denying

his motion to suppress.  Finding that the search of Henry's vehicle was not supported by

probable cause, we reverse the trial court and remand for new proceedings.

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.*

*Hudson*, 265 Va. 505, 514 (2003)).  That principle requires us to "discard the evidence of the

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

At 1:40 a.m. on December 20, 2022, Chesterfield County Police Officer Harrison Wells initiated a traffic stop on Henry's vehicle for expired tags. Henry reduced his speed and drove for around 30 seconds until he stopped at a hotel. Henry provided his driver's license and shook his head "no" when Officer Wells asked if there were any weapons in the vehicle, though he "consistently made an effort to avoid eye contact" with Officer Wells. Officer Wells observed Henry's eyes dart "down to his left knee" when he again asked Henry if he had a weapon. Officer Well's body-worn camera footage was played for the court. Officer Wells rephrased his question, asking instead "where the weapon was," and he observed Henry begin shaking in a manner he described as "consistent with nervousness." Officer Wells also observed that Henry was sweating "profusely" despite it being below freezing that evening. Henry freely admitted that he had smoked marijuana earlier that day.

Officer Wells noticed a torn lottery play slip, commonly used in the area as drug packaging material, in the cupholder of the vehicle. He took Henry's license and ran a search for active warrants while also requesting backup and a drug dog. Officer Wells returned to Henry's vehicle and found that Henry had lit a cigar. Officer Wells thought that Henry may have been "trying to mask the odor of alcohol or marijuana" with the cigar, although Wells had not smelled such odors before. Officer Wells asked Henry to step out of the car, and Henry gave him permission to open the door. When Officer Wells did so, he observed more torn play slips in the driver's door compartment.

Officer Wells patted Henry down for weapons before placing him "into investigative detention." After being read his *Miranda*[1] rights, Henry gave Officer Wells permission to search his pockets, where Officer Wells found $943 in cash. A subsequent search of the vehicle revealed folded lottery slips, baggies with marijuana stems, and various other folded pieces of paper. Among other packaging materials, Officer Wells found a blue pill with white residue that he believed to be pressed cocaine or fentanyl, which Henry represented was "Viagra that he got from someone." Officer Wells arrested Henry, and when they arrived at the jail, officers found a bag of 50 more pills in Henry's underwear. The pills later tested positive for methamphetamine.

Henry moved to suppress evidence from the search of his vehicle, arguing that the totality of the circumstances did not warrant extending the stop, detaining him, and searching him and his vehicle. The Commonwealth responded that the cumulative effect of Henry's nervousness, the time and location of the stop, his failure to pull over immediately, and the presence of the torn lottery play slips were enough to establish probable cause. The trial court ruled that the totality of the circumstances gave rise to probable cause and denied the motion to suppress. Henry then entered conditional guilty pleas to his charges, with this appeal following.

ANALYSIS

Henry argues that the circumstances of the stop were insufficient to support extending the stop, detaining him, and searching his vehicle and person. He notes, among other things, that lottery play slips have a legitimate purpose beyond drug packaging and that though he was nervous, he was not evasive, and he was compliant with police orders. Upon review, we find the trial court abused its discretion in denying Henry's motion to suppress.

On review of a circuit court's decision denying a motion to suppress, the appellate court "determine[s] whether the accused has met his burden to show that the [lower] court's ruling, when

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." *Knight v. Commonwealth*, 71 Va. App. 771, 782 (2020) (quoting *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015)). We review "the trial court's application of the law de novo." *Malbrough v. Commonwealth*, 275 Va. 163, 168-69 (2008). However, "[w]hile we are bound to review *de novo* the ultimate questions of reasonable suspicion and probable cause, we 'review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Long v. Commonwealth*, 72 Va. App. 700, 712 (2021) (footnote omitted) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

Henry argues that Officer Wells impermissibly extended the traffic stop when he detained and searched Henry and his vehicle. "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). The "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* (citation omitted) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Id.* at 350. "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* at 350-51 (alterations in original) (quoting *Caballes*, 543 U.S. at 407). However, "[i]f an officer develops independent reasonable suspicion or probable cause that an occupant has committed an additional traffic offense or crime, the officer may extend the stop for a reasonable amount of time in order to confirm or dispel that new suspicion." *Williams v. Commonwealth*, 71 Va. App. 462, 482 (2020).

- 4 -

"When used as a standard of calibrating certitude, '[t]he very phrase "probable cause" confirms that the Fourth Amendment does not demand all possible precision.'" *Evans v. Commonwealth*, 290 Va. 277, 287 (2015) (alteration in original) (quoting *Herring v. United States*, 555 U.S. 135, 139 (2009)). "To determine whether a police officer had probable cause to conduct a warrantless search of a vehicle . . . 'we examine the events leading up to the [search], and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *Curley v. Commonwealth*, 295 Va. 616, 622 (2018) (second alteration in original) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018)). Probable cause "is a 'flexible, common-sense standard.'" *Keene v. Commonwealth*, 74 Va. App. 547, 555 (2022) (quoting *Slayton v. Commonwealth*, 41 Va. App. 101, 106 (2003)). "Unlike a factfinder at trial, 'reasonable [police] officers need not "resolve every doubt . . . before probable cause is established."'" *Joyce v. Commonwealth*, 56 Va. App. 646, 660 (2010) (quoting *Slayton*, 41 Va. App. at 107). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Wesby*, 583 U.S. at 57 (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)).

Henry was pulled over for expired tags. In order to extend the stop beyond the time necessary to investigate that traffic offense and issue a citation, the officer needed to establish probable cause that another offense had occurred. As such, we must look to the totality of the information available to Officer Wells before he searched Henry's vehicle. So viewed, the evidence established that Henry was driving late at night in a car with expired tags. When Officer Wells activated his lights, Henry slowed down but continued driving a short distance until he came to a hotel parking lot. The evidence further showed that Henry was nervous, sweaty, and that he possessed a large amount of cash and a torn lottery slip. Henry also lit a cigar during the stop and

admitted that he had smoked marijuana—a legal substance at the time of the search—earlier that day. These circumstances were insufficient to give rise to probable cause to search Henry's vehicle.

Turning first to the lottery play slip, we note that "[t]he Supreme Court of Virginia has consistently held that, under the plain view doctrine, probable cause cannot be established 'solely on the observation of material which can be used for legitimate purposes, even though the experience of an officer indicates that such material is often used for illegitimate purposes.'" *Cauls v. Commonwealth*, 55 Va. App. 90, 100 (2009) (quoting *Grandison v. Commonwealth*, 274 Va. 316, 320 (2007)). Though the play slip certainly could have been used as drug packaging material, more was needed to give rise to probable cause to search the vehicle. There is no evidence that the play slip had visible drug residue or that it was unusual in any way other than being torn. Needless to say, a torn piece of cardstock does not by itself indicate illicit activity. Indeed, in the past we have repeatedly declined to find probable cause where the suspect was found with similarly incriminating materials. *See Cauls*, 55 Va. App. at 90 (a folded dollar bill and a plastic bag); *Grandison*, 274 Va. at 316 (a dollar bill in an "apothecary fold" and a segment of a drinking straw); *Snell v. Commonwealth*, 275 Va. 472, 473 (2008) (per curiam) (a tightly folded dollar bill); *Brown v. Commonwealth*, 270 Va. 414, 419-21 (2005) (a hand-rolled cigarette); *Harris v. Commonwealth*, 241 Va. 146, 154 (1991) (a film canister).

Nor can it be said that Henry's nervousness was sufficient to give Officer Wells cause to search the vehicle. Excessive nervousness is certainly a factor that an officer may rely on in support of a probable cause determination. *See Buhrman v. Commonwealth*, 275 Va. 501, 507 (2008). However, nothing about Henry's demeanor counselled that he might be armed or otherwise in possession of illegal substances: rather, he displayed nervousness one might expect of a young man being pulled over by police. While he was not particularly talkative during their encounter, Henry

made no furtive movements and was compliant with Officer Wells's commands. Henry allowed Officer Wells to pat him down, and Officer Wells found nothing except for some cash.

Though Henry lit a cigar during the stop, which Officer Wells interpreted as Henry attempting to conceal the odor of alcohol or marijuana, there is no evidence that Henry was driving erratically or otherwise exhibiting signs of intoxication. Henry admitted that he had consumed marijuana, but stated it had been earlier that day, and there is no evidence that the car smelled of marijuana or alcohol before Henry lit the cigar. Nor did Officer Wells seek at any point to confirm his suspicions with field sobriety tests. Simply put, nothing about Henry's behavior itself would lead an objective observer to anything more than a "hunch" he was engaged in illegal activity. *See McCain v. Commonwealth*, 275 Va. 546, 552 (2008) (reversing a trial court's probable cause finding where the defendant was nervous and loitering in a high crime area but was otherwise cooperative and made no furtive movements when approached by police (citing *Illinois v. Wardlow*, 528 U.S. 119 (2000))). Officer Wells's hunch may have been correct, but it was unsupported by probable cause.

## CONCLUSION

Because the search of Henry's vehicle was not supported by probable cause, the trial court erred in denying Henry's motion to suppress. Accordingly, we reverse Henry's conviction and remand for a new trial if the Commonwealth is so inclined.

*Reversed and remanded.*