COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Huff and Lorish
Argued at Norfolk, Virginia

NAKIA DURHAM

v.      Record No. 0650-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
JULY 25, 2023

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Tasha D. Scott, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

After a bench trial, Nakia Durham appeals his convictions of possession of a firearm by a

convicted felon and possession of a concealed weapon. Durham contends that the circuit court

erred in denying his motion to suppress evidence obtained during a search of his vehicle. He

also argues that the evidence was insufficient to sustain his convictions related to the firearm.

BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth,

the prevailing party in the [circuit] court." *Commonwealth v. Perkins*, 295 Va. 323, 323 (2018)

(quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)). Doing so requires us to "discard

the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

*Id.* at 323-24 (quoting *Vasquez*, 291 Va. at 236).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

At approximately 9:00 p.m. on March 26, 2021, Norfolk Police Department Officer Daniel Labat was driving through a "high crime area" when he noticed a sports utility vehicle ("SUV") parked at a housing complex that he regularly patrols. Officer Labat was familiar with the area and recognized that the SUV "wasn't one of the vehicles usually parked there." After "running the [SUV's] tags" through a Virginia Department of Motor Vehicles ("DMV") records database, Officer Labat determined that the SUV was registered under Durham's name and that Durham's driver's license was suspended. Officer Labat then resumed patrolling the area.

Thirty minutes later, Officer Labat initiated a stop of the SUV after seeing it leave the parking lot, knowing the registered owner of the SUV had a suspended license. The SUV came to a stop, and Officer Labat noticed four occupants inside: two rear passengers, a front passenger, and the driver, Durham. As Officer Labat exited his patrol car and approached the SUV from the rear on the driver's side, he saw Durham looking at him through the exterior driver's side mirror. While Officer Labat was making eye contact with Durham via the mirror, Durham was "twisting his body to the right" and reaching to his right toward the center console. As he did so, Officer Labat could see Durham's arms, but not his hands, and noticed that no one else was moving.

After Durham brought his hands back to his front, Officer Labat approached the SUV's driver's side window and saw an open bottle of alcohol (Hennessy) on the floorboard behind the driver's seat. When Durham rolled down the window and provided his identification card, Officer Labat could "smell the odor of alcoholic beverage coming from inside the vehicle." Officer Labat also noticed a Styrofoam cup in the center console, which was between the driver's seat and front passenger's seat. Officer Labat described the center console's configuration: "There's a driver's side and passenger side cup holder. Directly behind that is the center console that has an arm rest that raises and lowers for storage." The Styrofoam cup was in a cup holder "next to the front seat passenger" and contained an "amber clear" liquid. Durham handed

Officer Labat the Styrofoam cup when he asked about it. Officer Labat believed the liquid was liquor due to its appearance and smell. Officer Labat poured out the liquid and returned to his patrol car where he confirmed Durham's identity and license suspension.

Officer Labat walked back to the SUV and asked Durham and his passengers whether the SUV contained any weapons. When "[t]hey all said no," the officer had them exit the SUV so he could search it for "open containers of alcohol." Officer Labat grabbed the bottle of Hennessy and put it in the trunk of the SUV. After asking the occupants to exit the vehicle, he also observed another cup in the cupholder "on the driver's side" of the center console which he testified was in "plain view." The cup "contained a blue liquid" that smelled of liquor, so Officer Labat "poured that out and then continued [his] search." Officer Labat found a loaded black and silver Smith & Wesson .38 Special revolver inside the armrest compartment in the center console. The lid of the armrest compartment had been closed, but the latch designed to hold it shut was broken. Officer Labat noticed that the gun was "warm to the touch," and nothing else in the center console was warm. There were not many items in the center console, just some small items along the bottom.

Officer Labat detained Durham "for the firearm," read him his *Miranda*[1] rights, and questioned him about the gun. Durham denied that the gun was his and claimed that "he did not know whose it was." He also stated that "he heard the center console lid close" but "he didn't know who had opened it or closed it." After determining that Durham was a convicted felon, Officer Labat arrested him for possessing a firearm after conviction of a non-violent felony, possessing a concealed weapon, and driving on a suspended license, and issued a summons for drinking while driving.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Before trial, Durham moved to suppress evidence of the firearm found during the search of his SUV. At a hearing on the motion, Officer Labat testified that he did not obtain a warrant or permission to search the vehicle. Instead, Officer Labat searched Durham's SUV for "additional open containers" based on "the open containers of alcohol that [he] had found previously." Officer Labat testified that when searching a vehicle, he would typically inspect "less likely areas that could still hold contraband or other open containers," such as "miniature bottles" of alcohol that can fit under the seat of a vehicle. Officer Labat also testified that at the time of the search, Durham "was not under arrest for anything" and "was just being detained."

During argument on the motion, Durham asserted the search violated the Fourth Amendment because Officer Labat did not obtain a search warrant or consent to search his SUV, conduct an inventory search, or search the vehicle for "officer safety." In addition, Durham argued that Officer Labat did not search the SUV incident to his arrest because he was not under arrest at the time of the search, but only detained for a "summonsable" offense. Durham also asserted, "[J]ust because you have an open container, I don't think that gives probable cause to search the whole car for anything [police] may find." Durham argued that Officer Labat did not have probable cause to continue searching the vehicle for additional open containers of alcohol after discovering the first two and discarding their contents because there was nothing else "in open view [] which was illegal." Continuing, Durham argued that because "alcohol is not an inherently illegal item," the "issue is whether any alcohol was in the open container" when the officer continued the search. He reasoned that once Officer Labat had poured out the alcohol, he had "alleviated what . . . the open container charge is intended to prevent," he was not preserving evidence, and the officer could not search "any further than what he sees."

The circuit court stated that the search of a vehicle "is only justified if the officer is driven by . . . probable cause." The circuit court found that although Officer Labat had "found

an open bottle, which explained the presence of the brown liquid that was arguably in the cup nearest to the defendant[,]" Officer Labat "also identified some blue liquid." The circuit court stated that "[w]ithout understanding where that liquid was coming from, the Court finds it was reasonable for [Officer Labat] to pursue looking for some type of container that might have had that blue liquid." The circuit court further found that it was "reasonable for the officer to search for potentially a smaller bottle of blue liquid." The circuit court denied the motion to suppress.

At the conclusion of the Commonwealth's evidence at trial, the circuit court denied Durham's motion to strike the charges of possession of a firearm by a convicted felon and possession of a concealed weapon based on the sufficiency of the evidence to prove that he constructively possessed the firearm.

At the conclusion of all the evidence, the circuit court denied Durham's renewed motion to strike on the same grounds as previously argued. The circuit court convicted Durham of possessing a firearm after conviction of a non-violent felony, possessing a concealed weapon, and consuming an alcoholic beverage while driving.[2]

ANALYSIS

I. Suppression

Durham argues on appeal that the circuit court erred in denying his motion to suppress evidence obtained in the search of his vehicle because the officer had neither probable cause nor justification to search incident to an arrest. Durham contends that the officer's "observations of a cup containing a suspected alcoholic beverage and a previously opened liquor bottle in the rear passenger compartment" did not provide him with probable cause to search the vehicle.[3]

_____

[2] The circuit court acquitted Durham of driving on a suspended operator's license.

[3] In support of this assignment of error, Durham makes two arguments that he did not make in the circuit court. Durham argues that Officer Labat lacked probable cause to search the

This Court reviews the circuit court's denial of Durham's motion to suppress applying familiar principles:

> A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal. In making such a determination, we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment.

*Brooks v. Commonwealth*, 282 Va. 90, 94 (2011) (quoting *Jones v. Commonwealth*, 277 Va. 171, 177 (2009)). "[O]ur review includes evidence presented at both the suppression hearing and the trial." *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020). The principle that we are bound by the circuit court's findings of historical fact "unless plainly wrong or without evidence to support them," *id.* (quoting *Matthews v. Commonwealth*, 65 Va. App. 334, 341 (2015)), also requires us "to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers," *id.* (quoting *Commonwealth v. White*, 293 Va. 411, 414 (2017)).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment does not denounce all searches or seizures, but only such

---

vehicle because he did not note any characteristics of Durham reasonably associated with the consumption of alcohol, an element of the rebuttable presumption established in Code § 18.2-323.1(B) for use in a trial on the merits on a charge of drinking while driving. He also argues for the first time on appeal that Officer Labat was unreasonably mistaken as to what conduct Code § 18.2-323.1 proscribes—namely, that this statute proscribes drinking while driving as opposed to having an open container of alcohol in the vehicle. We note however that Durham's counsel stated at the suppression motion, that "the issue is whether any alcohol was in open container, and there wasn't any at that point." Thus, Durham named the issue as whether there was further evidence of alcohol in an open container, not whether Officer Labat was unreasonably mistaken about the law.

Because the dissent focuses its analysis on these arguments and in doing so, suggests that we simply ignore the requirements of Rule 5A:18 unless a violation is raised by a party, we will assume without deciding that Rule 5A:18 was complied with to avoid confusion regarding the dissent's peculiar approach to an unbriefed issue.

as are unreasonable." *Carroll v. United States*, 267 U.S. 132, 147 (1925). The United States Supreme Court has long recognized a difference between a search of a dwelling or other structure and a search of an automobile for contraband goods, "where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* at 153. "[I]f the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." *Id.* at 149.

> [P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief" that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.

*Purdie v. Commonwealth*, 36 Va. App. 178, 185 (2001) (alteration in original) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). "Probable cause does not require 'an actual showing,' but, rather, 'only a probability or substantial chance of criminal activity.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). "Probable cause takes into account the 'totality of the circumstances surrounding the search,' *Cost v. Commonwealth*, 275 Va. 246, 251 (2008), because the 'question whether the Fourth Amendment has been violated is always a question of fact to be determined from *all the circumstances*.' *Malbrough v. Commonwealth*, 275 Va. 163, 168 (2008)." *Bunch v. Commonwealth*, 51 Va. App. 491, 495 (2008). If given the totality of the circumstances "there is a fair probability that contraband or evidence of a crime will be found in a particular place," then probable cause is satisfied. *Gates*, 462 U.S. at 238. "[P]robable cause does not demand the certainty we associate with formal trials." *Id.* at 246.

Here, the totality of the circumstances supports the circuit court's finding that Officer Labat's search of the car was properly supported by probable cause. Code § 18.2-323.1(A)

proscribes consuming alcoholic beverage "while driving a motor vehicle upon a public highway of the Commonwealth." As Officer Labat approached Durham's vehicle he saw Durham twist to his right towards the center console and move his arms, while maintaining eye contact with Officer Labat through the driver's side mirror.[4] Through the rear window, Officer Labat saw an open bottle of Hennessy in the floorboard behind the driver's seat. Officer Labat noticed the smell of alcoholic beverage coming from the vehicle when Durham opened the driver's side window. Officer Labat saw a cup in the center console cupholder containing an amber-colored liquid, which he smelled and believed to be liquor. Finally, after all occupants stepped out of the vehicle, Officer Labat saw a cup containing blue liquid that smelled of alcohol which was in the driver's side center console cup holder. With two cups each containing an alcoholic beverage in between the driver and the passenger, it would be a fair inference on the part of the officer that at least one of the cups belonged to the driver. Given that each alcoholic beverage was in an open cup, it would also be a reasonable inference that the beverage was there for immediate consumption—i.e., Durham was drinking it while driving the vehicle and not saving it for later. The totality of these circumstances supports a reasonable belief that the vehicle contained further evidence of that offense, such as an open bottle from which the blue liquid came, or miniature liquor bottles. Thus, the warrantless search of the vehicle was justified by probable cause. *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.").

In response to the dissent, we agree that the conduct proscribed by Code § 18.2-323.1 is *drinking* while driving, not simply having an open container containing alcohol. Our review of

---

[4] "[F]urtive gestures coupled with other indicia of criminal engagement may suffice to establish probable cause." *Copeland v. Commonwealth*, 42 Va. App. 424, 434 (2004).

the existence of probable cause uses an objective standard with this conduct in view. Whether or not Officer Labat understood that the proscribed conduct was drinking while driving, an objective officer could reasonably conclude, based on the totality of the circumstances in this record, that Durham had been drinking while driving and that the vehicle contained further evidence of such conduct. *See Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" (alteration in original) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978))).

In disagreeing with our probable cause review, our dissenting colleague emphasizes the rebuttable presumption set out in Code § 18.2-323.1(B)[5] implying that Officer Labat had to have evidence to meet each element of the rebuttable presumption to satisfy probable cause to search Durham's vehicle. The dissent misconstrues the statutory purpose of the rebuttable presumption, which is relevant to proving the Commonwealth's case at *trial*. Once the Commonwealth establishes the elements of the presumption at *trial*, the presumption shifts the burden of producing evidence to the defendant to rebut the presumption. *See, e.g.*, *Yap v. Commonwealth*, 49 Va. App. 622, 636 (2007) (finding rebuttable presumption in Code § 18.2-269 "allows a permissive inference that the fact finder is free to reject," and "shifts the burden of producing

---

[5] Code § 18.2-323.1(B) provides,

> [A] rebuttable presumption that the driver has consumed an alcoholic beverage in violation of this section shall be created if (i) an open container is located within the passenger area of the motor vehicle, (ii) the alcoholic beverage in the open container has been at least partially removed, and (iii) the appearance, conduct, odor of alcohol, speech, or other physical characteristic of the driver of the motor vehicle may be reasonably associated with the consumption of an alcoholic beverage.

evidence, while the burden of proof remains with the Commonwealth"). The rebuttable presumption is not a required component to establish probable cause.

Furthermore, the dissent ignores the principle that in a probable cause review, the appellate court must give "due weight to inferences" drawn from the facts by "resident judges and local law enforcement officers." *Williams*, 71 Va. App. at 475. While Officer Labat did not explicitly testify that Durham's movements were "furtive," or say exactly what he thought Durham was doing with his arms and hands, the testimony was clear that he thought Durham's movements were significant, and a fair inference includes that Durham was hiding something from the officer in the center console. Moreover, contrary to the dissent's assertion, probable cause was *not* based on these movements alone. Prior to Officer Labat searching the vehicle, he noticed the odor of alcoholic beverage coming from the car and he observed, all in plain view, the opened bottle of Hennessy, a cup containing an amber-colored alcoholic beverage, and a cup containing a blue alcoholic beverage. Although not noticed until the occupants of the vehicle had stepped out of it, when Officer Labat saw the blue alcoholic beverage, the cup was still in plain view as it was sitting in the center console cup holder, next to the first cup of amber alcoholic beverage. *See Cauls v. Commonwealth*, 55 Va. App. 90, 99 (2009) ("[I]f an item is indeed in 'plain view,' the Fourth Amendment is not engaged unless and until the item is seized because no search has occurred.").[6] The proximity of both cups of alcoholic beverage to Durham's reach as he sat in the driver's seat are relevant to the probable cause of whether he was drinking while driving. While the open bottle of Hennessey in the rear floorboard *alone* would

_____

[6] At the suppression hearing, Durham's argument was that "once [Officer Labat] dumped out all of the alcohol, his further search of the car including the compartments was an unreasonable search of the vehicle." Durham's counsel agreed with the circuit court's statement of the issue, "The question is did he have probable cause . . . [t]o go into every nook and cranny of the car." Thus, Durham's argument in circuit court was confined to the unreasonableness of the officer's search *beyond* the cups in the center console, i.e., beyond whatever was in plain view.

- 10 -

likely not supply probable cause of drinking while driving, it is relevant to the totality of the circumstances and the reasonable inferences that the officers on the scene and circuit court judges are permitted to draw from the facts established.

We conclude that the circuit court did not err in concluding that probable cause existed to search the vehicle and accordingly in denying the motion to suppress the evidence found in that search.[7]

## II. Sufficiency of the Evidence

Durham contends that the evidence was insufficient to sustain his convictions for the firearm offenses because the evidence did not establish that he "was ever in either actual or constructive possession of the revolver seized from the center console of his vehicle." Relying on *Hancock v. Commonwealth*, 21 Va. App. 466, 468 (1995), Durham argues that the record contains no evidence beyond his mere "proximity to the revolver and ownership of the vehicle" to establish that he possessed the firearm.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Instead, we ask only 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Secret*, 296 Va. at

---

[7] Because we find the officer's search of the vehicle justified by probable cause, we do not need to address whether the officer also had justification to search incident to an arrest, as Durham raises in his assignment of error. "The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)).

228).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *Id.* (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession," whether sole or joint.  *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)).  Constructive possession must be established by "evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control."  *Id.* (quoting *Bolden*, 275 Va. at 148).  The issue of what constitutes constructive possession "is largely a factual one."  *Id.* (quoting *Ritter v. Commonwealth*, 210 Va. 732, 743 (1970)).

Although "ownership or occupancy alone is insufficient to prove knowing possession of [contraband] located on the premises or in a vehicle," other circumstantial evidence coupled with ownership or occupancy may establish the constructive possession of such contraband.  *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992).  "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion."  *Pijor v. Commonwealth*, 294 Va. 502, 512-13 (2017) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).  Moreover, a guilty verdict demonstrates that "the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'"  *James v. Commonwealth*, 53 Va. App. 671, 681 (2009) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)).  That conclusion "is itself a 'question of fact,' subject to deferential appellate review."  *Id.*

Durham's reliance upon *Hancock v. Commonwealth* is misplaced because the facts are distinguishable. In *Hancock*, a police officer found a gun lying on the rear floorboard underneath the defendant's feet when the officer asked him and four other occupants to exit the vehicle during a traffic stop at night. 21 Va. App. at 468. The officer noticed that the gun had "fresh mud on it" and Hancock's feet were wet. *Id.* No evidence established that Hancock "ever held the firearm, saw it, knew it was present, or exercised any dominion and control over it." *Id.* at 472. This Court found that "[p]roof that the firearm was located close to Hancock was not sufficient to prove the elements of the offense beyond a reasonable doubt." *Id.*

Here, the record demonstrates that Durham's conviction was based on more than his mere ownership of the SUV and proximity to the firearm. At trial, Officer Labat testified that as he approached the SUV to conduct the traffic stop, Durham reached toward the center console where the gun was found while keeping his eyes focused on Labat. Furthermore, Officer Labat saw "nobody else" moving in the SUV as he approached. From that evidence, it was reasonable for the circuit court to conclude that Durham hastily attempted to conceal the firearm in the center console to avoid detection by police. *See Adkins v. Commonwealth*, 217 Va. 437, 438-39 (1976) (holding evidence sufficient to support a conviction for constructive possession of marijuana found on driver's floorboard of the vehicle where police officer saw the defendant move from the driver's seat to the passenger seat as the officer approached); *Bagley v. Commonwealth*, 73 Va. App. 1, 29 (2021) (holding defendant's "status as the driver of the car, his proximity to the drugs, his furtive movements toward the [drugs'] location," and hurried exit from the vehicle was sufficient to prove that he constructively possessed the drugs). That Officer Labat noticed that the gun was the only item in the center console that was still "warm to the touch" underscores that conclusion. *See United States v. Jones*, 432 F.3d 34, 38 (1st Cir. 2005) (holding police reasonably inferred from the fact that a gun was "still warm and dry" that the

- 13 -

defendant had discarded it while fleeing).  Thus, we conclude that *Hancock* is inapposite, and a reasonable fact finder could conclude beyond a reasonable doubt that Durham constructively possessed the gun found in the vehicle's console.

For the above reasons, we affirm the circuit court's judgment.

*Affirmed.*

Lorish, J., dissenting.

It is not a crime in Virginia to drive with an "open container" of alcohol. Because at least 45 other states make that conduct criminal, it is a common (though mistaken) assumption that Virginia does as well.[8]

It is a crime to *drink* alcohol while driving. Code § 18.2-323.1(A). Thus, if Officer Labat had probable cause that Durham was *drinking* alcohol while driving, he could search his vehicle for evidence of that crime in his vehicle. *See Carroll v. United States*, 267 U.S. 132, 149 (1925). But having an open container of alcohol while driving creates merely a rebuttable presumption that the driver is drinking while driving, and only if the following conditions are met:

> (i) an open container is located within the passenger area of the motor vehicle, (ii) the alcoholic beverage in the open container has been at least partially removed, and (iii) the appearance, conduct, odor of alcohol, speech, or other physical characteristic of the driver of the motor vehicle may be reasonably associated with the consumption of an alcoholic beverage.

Code § 18.2-323.1(B).

---

[8] *See* Ala. Code § 32-5A-330; Alaska Stat. Ann. § 28.35.029; Ariz. Rev. Stat. Ann. § 4-251; Ark. Code Ann. § 5-71-218; Cal. Veh. Code § 23225; Cal. Veh. Code § 23222; Cal. Veh. Code § 23223; Cal. Veh. Code § 23226; Colo. Rev. Stat. Ann. § 42-4-1305; Fla. Stat. Ann. § 316.1936; Ga. Code Ann. § 40-6-253; Haw. Rev. Stat. Ann. § 291-3.3; Haw. Rev. Stat. Ann. § 291-3.1; Idaho Code Ann. § 23-505; Idaho Code Ann. § 23-1333; 625 Ill. Comp. Stat. Ann. 5/11-502; Ind. Code Ann. § 9-30-15-3; Iowa Code Ann. § 321.284; Iowa Code Ann. § 321.284A; Kan. Stat. Ann. § 8-1599; Ky. Rev. Stat. Ann. § 189.530; La. Stat. Ann. § 32:300; Me. Rev. Stat. Ann. tit. 29-A, § 2112-A; Md. Code Ann., Crim. Law § 10-125; Mass. Gen. Laws Ann. ch. 90, § 24I; Mich. Comp. Laws Ann. § 257.624a; Minn. Stat. Ann. § 169A.35; Mont. Code Ann. § 61-8-1026; Neb. Rev. Stat. Ann. § 60-6,211.08; Nev. Rev. Stat. Ann. § 484B.150; N.H. Rev. Stat. Ann. § 265-A:44; N.J. Stat. Ann. § 39:4-51b; N.M. Stat. Ann. § 66-8-138; N.Y. Veh. & Traf. Law § 1227; N.C. Gen. Stat. Ann. § 20-138.7; N.D. Cent. Code Ann. § 39-08-18; Ohio Rev. Code Ann. § 4301.62; Okla. Stat. Ann. tit. 21, § 1220; Or. Rev. Stat. Ann. § 811.170; 75 Pa. Stat. and Cons. Stat. § 3809; 31 R.I. Gen. Laws Ann. § 31-22-21.1; S.C. Code Ann. § 61-6-4020; S.C. Code Ann. § 61-4-110; S.D. Codified Laws § 35-1-9.1; Tenn. Code Ann. § 55-10-416; Tex. Penal Code Ann. § 49.031; Utah Code Ann. § 41-6a-526; Vt. Stat. Ann. tit. 23, § 1134a; Vt. Stat. Ann. tit. 23, § 1134; Wash. Rev. Code Ann. § 46.61.519; W. Va. Code Ann. § 17C-5D-3; Wis. Stat. Ann. § 346.935; Wyo. Stat. Ann. § 31-5-235.

Before proceeding, I must address a disagreement about the record that ultimately impacts the information this Court looks at in reviewing whether Officer Labat's probable cause determination was reasonable. My colleagues in the majority and I agree that the vehicle Durham was driving was lawfully pulled over. We agree there was a front seat passenger and two back seat passengers. And we agree that when Officer Labat approached the vehicle, he saw an "open Hennessy bottle" on the floorboard behind the driver's seat. From this vantage point, he also saw a Styrofoam cup in the center console, "next to the front seat passenger" which contained an "amber clear" liquid which Officer Labat suspected was "liquor due to its appearance and smell."

Where we disagree is when the search began. I rely on Officer Labat's testimony that after the events described above, he told the passengers to leave the SUV so he could search it for "open containers of alcohol." In Officer Labat's own words, it was only after he "began [his] search of the vehicle for additional open containers in the driver's seat area [that he] noticed another cup that was actually in the cup holder on the driver's side" and that "contained a blue liquid."[9] Because Officer Labat only found the cup with the blue liquid on the driver's side of the console *after* he began searching the vehicle, I disagree with the majority that we can consider this cup in determining whether a reasonable officer would have probable cause to believe evidence of a crime—the crime of drinking while driving—would be found in the vehicle.

_____

[9] Because Officer Labat only saw the cup with the blue liquid *after* he began his search, the majority's reliance on the "plain view" doctrine is inapposite. Evidence found during an illegal search cannot be used to bootstrap the probable cause that existed prior to the search. *See Cauls v. Commonwealth*, 55 Va. App. 90, 99 (2009) (noting that the plain view doctrine only justifies the seizure of evidence when the officer "did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed").

Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Curley v. Commonwealth*, 295 Va. 616, 622 (2018) (quoting *Jones v. Commonwealth*, 277 Va. 171, 178 (2009)). To determine whether a police officer had probable cause to conduct a warrantless search of a vehicle, as here, "we examine the events *leading up to* the [search], and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* (alteration in original) (emphasis added) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). As a result, a court must consider what the "totality of the facts and circumstances" would have "reasonably meant to a trained police officer" before initiating the search. *Id.* (quoting *Jones v. Commonwealth*, 279 Va. 52, 59 (2010)); *see also Evans v. Commonwealth*, 290 Va. 277, 284 (2015) ("[T]he proper inquiry focuses on what an objective officer could reasonably believe." (quoting *United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991))); *McCain v. Commonwealth*, 275 Va. 546, 552 (2008) ("Review of the existence of probable cause . . . involves application of an objective rather than a subjective standard.").

Before Officer Labat began his search, he had observed the following:

- Durham in the front driver seat along with someone in the front passenger seat;
- A Styrofoam cup with an amber clear liquid that looked and smelled like alcohol in the center console *next to the front seat passenger*;
- The smell of alcohol "coming from the vehicle" but without the ability to "tell if it was [Durham] or the vehicle at that point";
- Two passengers in the rear of the vehicle;
- An open Hennessey bottle *in the rear of the vehicle*, behind the driver's seat; and
- Durham "twisting his body to the right" and "reaching to his right-hand side" while Officer Labat could "see his arms and . . . also see the rest of the passengers."

At best, this *may* constitute probable cause that someone in the back seat of the vehicle was drinking while Durham was driving (given the location of the Hennessey bottle), or that the front seat passenger (next to the Styrofoam cup) was drinking while Durham was driving, but it simply

- 17 -

does not provide any evidence to suggest that *Durham* was drinking while he was driving. Probable cause to search "must be particularized to that individual; mere proximity to criminal activity alone is insufficient to establish probable cause." *Whitehead v. Commonwealth*, 278 Va. 300, 313 (2009).

This conclusion is bolstered by the factors the General Assembly set out in Code § 18.2-323.1(B) and which create a "rebuttable presumption" that "the driver has consumed an alcoholic beverage in violation of this section." The majority dismisses these factors entirely, suggesting they are only "relevant to proving the Commonwealth's case at *trial*." While I certainly agree that an officer need not tick off each factor from the list to conclude there is probable cause a driver violated Code § 18.2-323.1(B), the items listed here are nevertheless *relevant* to whether the statute has been violated. Otherwise, the General Assembly would not have listed them as factors that create a "permissible inference" that a statute was violated. Ronald J. Bacigal & Corinna Barrett Lain, *Virginia Practice Series, Criminal Procedure* § 17:8 (2022) ("What is often referred to as a presumption is in reality a permissible inference."). Factors that establish a permissible inference that criminal activity occurred are equally relevant to whether there is a "probability or substantial chance of criminal activity." *Purdie v. Commonwealth*, 36 Va. App. 178, 185 (2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 243, n.13 (1983)).

Turning to those factors, there is no evidence in the record that liquid was "at least partially removed" from the cup with the amber clear liquid on the passenger's side. *See* Code § 18.2-323.1(B)(ii). There was also no evidence that Durham's appearance, conduct, speech, or physical characteristics were "reasonably associated with the consumption of an alcoholic beverage" such that the presumption set out in the statute may have been satisfied. Code § 18.2-323.1(B)(iii). The Commonwealth argues that Durham's "twisting his body to the right"

and "reaching to his right-hand side" while Officer Labat approached his vehicle should be a qualifying physical characteristic. In the context of assessing whether a driver is under the influence of alcohol, we have previously described performance on the "physical components" of "field sobriety tests" as requiring a defendant "to exhibit certain physical characteristics." *Gibson v. Commonwealth*, 57 Va. App. 772, 780 (2011). I would interpret "physical characteristics" in the statute to be characteristics produced from the consumption of alcohol, consistent with the way that "appearance, conduct, odor of alcohol, [and] speech" are characteristics produced from the consumption of alcohol. *See also Cuccinelli v. Rector, Visitors of Univ. of Virginia*, 283 Va. 420, 432 (2012) (applying principle of *noscitur a sociis,* "a word is known by the company it keeps," in interpreting a word consistently with the words around it). Nothing about the twisting or reaching motion suggests it was produced from the consumption of alcohol. Nor did Officer Labat testify that the odor of alcohol was coming from Durham, as opposed to the car more generally.

Ignoring these statutory factors and the lack of evidence supporting them, the majority takes a different tack—applying the label of "furtive movement" to Durham's movement, and suggesting that while Officer Labat did not testify what he thought Durham was doing, the testimony is clear he thought the actions were "significant." Even if his movement was "furtive," such a gesture cannot, without more, constitute probable cause. *See, e.g.*, *Copeland v. Commonwealth*, 42 Va. App. 424, 434 (2004) ("Furtive gestures alone have been held insufficient to establish probable cause."); *Curley*, 295 Va. at 623 n.4 (noting the defendant's "furtive movements were only one of multiple significant factors giving rise to probable cause to search [the] vehicle"). Here, a gesture combined with an open container next to the passenger, and an open container in the back seat, may have given a reasonable officer a "strong suspicion"

that Durham had been drinking while driving, but strong suspicion is not probable cause. *Whitehead*, 278 Va. at 314.[10]

In reaching this conclusion, I note that a different panel of this Court recently reversed a court's conclusion that an officer had probable cause Code § 18.2-323.1 was violated where the driver was the only occupant of the vehicle, disobeyed an officer's directive to roll down a window (instead opening a passenger side door), where there was a bottle of liquor on the passenger side floorboard near the center console with less than a quarter of the contents remaining, and where the defendant's manner of speaking was "odd."[11] *McEachin v. Commonwealth*, No. 0543-22-1 (Va. Ct. App. July 25, 2023).[12] Likewise, in *Commonwealth v. Branch*, No. 0132-22-1 (Va. Ct. App. June 21, 2022), a panel of this Court affirmed the denial of a motion to suppress, agreeing that an "open container's mere proximity to [the driver] alone is insufficient to establish probable cause that he drank from the container while driving" even where the driver and passenger "both appeared nervous," and "the bottle had some liquid missing." Both opinions looked to the factors listed in Code § 18.2-323.1(B)(ii) as relevant to whether a reasonable officer would have found probable cause to search the vehicle.

---

[10] Drivers are consistently subject to rules and obligations that do not apply to passengers, and drivers (not passengers) are responsible for knowing and following the traffic laws. The location of the open containers in the vehicle must be considered within the context of meaningful distinctions between drivers and passengers. For example, a driver may not use a handheld personal communications device while driving, but a passenger can. *See* Code § 46.2-818.2. A phone sitting next to a *passenger* creates exceedingly little inference that the *driver* had just been texting.

[11] Although the bottle had a cap screwed on, it was an "open container" under Code § 18.2-323.1(C), because it was not an "originally sealed manufacturer's container." *McEachin v. Commonwealth*, No. 0543-22-1, slip op. at 7 n.7 (Va. Ct. App. July 25, 2023).

[12] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012); *see* Rule 5A:1(f).

For these reasons, I disagree with the majority that the "totality of these circumstances supports a reasonable belief that the vehicle contained further evidence of drinking while driving."[13] On that basis alone, I would reverse and remand for further proceedings.[14]

---

[13] While not specifically argued below, the totality of the circumstances includes the length of time Durham was behind the wheel of the vehicle. The record is clear on this point: Officer Labat did not *see* Durham drink anything while he was driving. Instead, Officer Labat knew Durham's vehicle was parked in front of a public housing area off of Bagnall Road for at least 30 minutes. Then Officer Labat drove past the car while it was leaving the parking lot, and "did a U-turn" to "catch up as it was driving on Bagnall Road," following the vehicle and pulling it over in the nearby Shop N' Go parking lot. Even if Durham *intended* to drink while driving, it is unlikely he had the time to do so.

[14] The majority assumes without deciding that Durham's other arguments complied with Rule 5A:18. I would simply find that Rule 5A:18 does not apply because the "Commonwealth has not argued before the panel of this Court" that the arguments were waived. *Maust v. Commonwealth*, No. 0505-21-4, slip op. at 8 n.5 (Va. Ct. App. May 30, 2023). Because Rule 5A:18 does not implicate this Court's subject matter (or potential) jurisdiction, it instead sets out rules of active jurisdiction otherwise referred to as "mandatory procedural requirement[s]." *Davis v. Commonwealth*, 282 Va. 339, 339 (2011). These mandatory procedural rules "require[] a court . . . to adjudicate a case consistent with the law governing that adjudication." *Cilwa v. Commonwealth*, 298 Va. 259, 266-67 (2019). Unlike defects in subject matter or potential jurisdiction, "[d]efects in active jurisdiction can be waived." *Id.* at 270. When a party has waived reliance on Rule 5A:18, this Court should not raise it sua sponte absent a "threat[ to] the judiciary's institutional interests to such an extent that intervening in the adversarial process by raising a forfeited or waived" rule is necessary. *United States v. Oliver*, 878 F.3d 120, 128 (4th Cir. 2017). For example, institutional concerns would prohibit this Court from reaching any issue where the factual record was not adequately developed below, and constitutional avoidance principles may counsel against resolving unpreserved arguments raising constitutional concerns. Absent institutional concerns (which do not apply here), we should not contradict our general deference to the way parties choose to litigate their cases. Indeed, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (alteration in original) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)).