COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Malveaux and Senior Judge Annunziata
Argued at Norfolk, Virginia

PUBLISHED

ANTHONY MARQUIS DANIELS

v.        Record No. 1351-17-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
NOVEMBER 6, 2018

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Charles J. Maxfield, Judge Designate

Ivan D. Fehrenbach (D.R. Dansby, Ltd., on briefs), for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellee.


Following a conditional guilty plea, appellant Anthony Marquis Daniels ("Daniels") was

convicted in the Circuit Court of the City of Williamsburg and County of James City (the "circuit

court") of manufacturing or selling a controlled substance, in violation of Code § 18.2-248, and

possession of marijuana, second or subsequent offense, in violation of Code § 18.2-250.1.  The

circuit court sentenced Daniels to serve ten years and thirty days in prison, with five years

suspended.  On appeal, Daniels alleges the following assignments of error resulting from the

circuit court's denial of his two motions to suppress:

> 1.  The [circuit] court erred when it denied Daniels' Motions to
> Suppress the Evidence in the apartment because the search of the
> apartment violated Virginia Code Section 19.2-54.
>
> 2.  The [circuit] court erred when it denied Daniels' Motions to
> Suppress the Evidence in the Toyota Avalon vehicle because the
> court's reliance on the plain view exception to the warrant
> requirement was clearly erroneous.

3.  The [circuit] court erred when it denied Daniels' Motions to Suppress the search of the vehicle, thereby also denying Daniels' Motions to Suppress his inculpatory statements as derivative from an illegal search.

## I.  BACKGROUND

On May 27, 2016, Investigator David Rochard ("Investigator Rochard") of the James City County Police Department and a member of the Tri-Rivers Drug Task Force (the "task force") was investigating a heroin overdose.  The overdose occurred two days earlier on May 25, 2017.  Specifically, the task force was investigating heroin packaged in wax paper bags stamped with the word "Miracle" in red ink.  This specific packaging was found at the scene of the overdose.

An informant advised police that Daniels was the supplier of the distinctively marked heroin.  The informant also described the apartment complex where Daniels resided and sold heroin and mentioned that Daniels drove a "blue-green sedan . . . probably a Toyota."  The informant had previously purchased heroin from Daniels behind the apartment complex.  Based upon this information, the task force determined that Daniels resided at the "Regency at Longhill" apartment complex.

Investigator Rochard and the task force subsequently conducted surveillance on the apartment complex.  At some point, the task force "located a vehicle that possibly matched the description based upon the [informant's] observations[.]"  As Investigator Rochard and Investigator John Graca ("Investigator Graca") passed the vehicle, Investigator Rochard "positively identified [Daniels] from a photograph that [he] had pulled after having spoken with the witness" and based upon information in a police database.  Investigators Rochard and Graca then observed the vehicle park in front of 5405 Lane Place Drive, Apartment G.  Daniels was riding in the passenger seat of the vehicle with an unknown female driving.  The vehicle was registered to a female living at 5405 Lane Place Drive, Apartment G.

Around 8:21 p.m., Investigator Rochard applied for and obtained a search warrant permitting a search of "the residence, curtilage, outbuilding and vehicle[.]" However, the search warrant that Investigator Rochard received did not include the vehicle within its scope. After witnessing Daniels and the unknown female enter the apartment, a police SWAT team executed the search warrant. Daniels attempted to flee from the top window of the apartment after the SWAT team knocked on the front door. The SWAT team then made a forced entry into the apartment and detained Daniels and the unknown female. Inside, officers found a small amount of marijuana, a digital scale, and approximately $1,000 in cash. The unknown female occupant was later identified as Valerie Kramer Burton ("Burton"), Daniels' fiancée. Burton was not arrested.

While the vehicle was being secured, Investigator Rochard received a radio transmission from another officer that there was a suspicious item, in plain view, inside the vehicle. Investigator Rochard approached the vehicle and observed through the car window, "from the passenger side looking down[,]" that the door handle contained "a bundle of wax paper bag[s] . . . secured by a rubber band." According to Investigator Rochard, "[i]n that bundle you could see what appeared to be a red stamp. I couldn't make out what it said but it was a red stamp."[1] Investigator Rochard believed that the bundle was packaged heroin based upon his training and experience.

After opening the vehicle door and retrieving the bundle, Investigator Rochard observed that the various packages contained in the bundle were stamped with the word "Miracle" in red.

_____

[1] During the cross-examination of Investigator Rochard, Daniels attempted to show that based upon photographs of the heroin discovered in the vehicle, "you can't see any red in that picture[.]" In response, Investigator Rochard testified that the photograph "was not the angle in which I appeared to see the item but from this picture it does not appear to be on top of a bag there appears to be a red marking. I do see red from this picture." When asked to clarify his testimony, Investigator Rochard replied, "I do. I can't make it out clearly but there appears to be a red substance or marking on top of those bags."

However, before he could see the word "Miracle" clearly, Investigator Rochard needed to remove the rubber band from the bundle and observe the packages "a little more closely." Investigator Rochard photographed the evidence and subsequently discovered four additional bundles of heroin packaged in the center console and trunk of the vehicle, totaling over one hundred bags.  At that point, Investigator Rochard informed Daniels of his Miranda rights and explained what items were discovered in the vehicle.  Daniels admitted that the heroin belonged to him, not his fiancée, and agreed to cooperate.  Daniels was interrogated a second time by Investigators Rochard and Graca at the James City County Police Department.

Daniels filed two motions to suppress.  The first motion challenged the vehicle search and Daniels' inculpatory statements.  The second motion to suppress relied upon Code § 19.2-54 to argue for the suppression of "all evidence found pursuant to the searches conducted in the instant case, and to suppress all statements [Daniels] made to law enforcement officers[.]"

The hearing on Daniels' motions to suppress took place on April 17, 2017.  There, Daniels argued that the magistrate's failure to file a copy of the affidavit as required by Code § 19.2-54 rendered the search invalid and required the exclusion of evidence obtained by the task force.  Daniels also argued that the good faith exception to the warrant requirement could not apply in this case because of this Court's decision in Campbell v. Commonwealth, 66 Va. App. 677, 791 S.E.2d 351 (2016), and because Code § 19.2-54 provides for a statutory remedy.

During the hearing, the Commonwealth called Investigator Rochard as its first witness. After describing the events leading up to Daniels' arrest, Investigator Rochard noted that over the course of his career, he had come into contact with heroin over one hundred times and that he had attended classes specifically addressing the packaging and distribution of heroin.  Further, Investigator Rochard testified that heroin is often packaged in wax paper bags with rubber bands securing bundles together.  He added that, "[t]ypically, heroin does have a marking or it's a

stamp or some sort of marking identifying as, if you will, a product from specific origin[.]" Investigator Rochard testified that, based upon his training and experience, he believed that the bundle observed in the passenger side door handle was packaged heroin, which he subsequently retrieved and confirmed.

Investigator Rochard also addressed the search warrant issue during his testimony. Investigator Rochard confirmed that on June 1, 2016, he filed a search warrant affidavit with the circuit court. Investigator Rochard also had a copy of the search warrant and supporting affidavit during the hearing. Investigator Rochard testified that the affidavit was complete and that he was aware of the magistrate's failure to file a copy of the affidavit. Investigator Rochard testified that he was present before the magistrate when the search warrant was issued and asked the magistrate to base the issuance of the search warrant on the information contained in the affidavit.

The circuit court also heard testimony from Investigator Graca and Burton. Notably, Burton testified that she was the owner of the vehicle searched by Investigator Rochard, a 1999 Toyota Avalon. Burton also confirmed that she makes the car payments on the vehicle. She noted, however, that Daniels frequently drove the vehicle, performed all the required maintenance, and stored items inside the vehicle.

After hearing arguments from counsel, the circuit court denied both motions to suppress. Explaining its decision with respect to the Code § 19.2-54 issue, the circuit court found that the purpose of the statute is to "provide notice to the defendant." The circuit court also found that it was conjecture that Investigator Rochard could have filed a different affidavit than what the magistrate had reviewed when the magistrate made the probable cause determination. Further, the circuit court found that Code § 19.2-54 served a notice function and was not designed as a check and balance system, as argued by Daniels.

- 5 -

Turning to the warrantless vehicle search, the circuit court determined that Investigator Rochard could observe the bundle of heroin in plain view and that Investigator Rochard was able to determine that the bundle and packaging contained narcotics based upon his training and experience. Finally, the circuit court found that Daniels made the inculpatory statements at issue after receiving and understanding his Miranda rights, which Daniels waived. On April 26, 2017, the circuit court entered a denial order reflecting its decision.

On June 13, 2017, Daniels entered into a plea agreement with the Commonwealth, which permitted him to enter a conditional plea of guilty pursuant to Code § 19.2-254. Following a hearing on August 2, 2017, Daniels was sentenced to a total sentence of ten years and thirty days in prison, with five years suspended. This appeal follows.

## II. ANALYSIS

### A. Standard of Review

"Upon review of the [trial] court's denial of a suppression motion, 'the burden is upon [the appellant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" Hill v. Commonwealth, 68 Va. App. 610, 616-17, 812 S.E.2d 452, 455 (2018) (quoting Andrews v. Commonwealth, 37 Va. App. 479, 488, 559 S.E.2d 401, 406 (2002)). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). However, an appellant's "claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." Moore v. Commonwealth, 69 Va. App. 30, 36, 813 S.E.2d 916, 918 (2018) (quoting Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)).

B.  The Apartment Search

In his first assignment of error, Daniels argues that the circuit court erred in denying his motion to suppress evidence obtained inside the apartment because the magistrate's failure to file the required affidavit did not satisfy the requirements of Code § 19.2-54 and, as a consequence, the warrant, and the search made under the authority of that warrant, were invalid.  Pursuant to that statute, Daniels argues that the "clear statutory remedy was suppression of the evidence."

While inartfully drafted, Code § 19.2-54 requires that a judicial officer issuing the search warrant (here, a magistrate) file the supporting affidavit with the clerk of the circuit court.  This statute sets forth what must be included in the affidavit and further provides that such affidavit shall be certified by the officer who issues such warrant and delivered "*by such officer or his designee or agent*, to the clerk of the circuit court of the county or city wherein the search is made, within seven days after the issuance of such warrant[.]"  Code § 19.2-54 (emphasis added).  Further, the final paragraph of the statute provides that the "[f]ailure of the [judicial] officer issuing such warrant to file the required affidavit shall not invalidate any search made under the warrant unless such failure shall continue for a period of 30 days."  Id.

Here, Investigator Rochard applied for and obtained the search warrant at issue on May 27, 2016.  As reflected in the record and noted by both the Commonwealth and Daniels, "the magistrate filed no search warrant affidavit at all, and none is expected to be filed" with the clerk of the circuit court.  However, the record reflects that Investigator Rochard filed a copy of the search warrant affidavit with the circuit court on June 1, 2016, five days after obtaining the search warrant.  The record is silent with respect to whether Investigator Rochard was formally acting as a "designee or agent" for the magistrate when he did so.

Daniels argues that based upon the language contained in the final paragraph of Code § 19.2-54, the magistrate's failure to file the required affidavit within the prescribed thirty days

invalidates the search warrant and apartment search. His argument continues that because the evidence was seized pursuant to a technically defective search warrant, the evidence obtained during the apartment search was not admissible and should have been suppressed. Daniels also addresses our Supreme Court's recent decision in Commonwealth v. Campbell, 294 Va. 486, 807 S.E.2d 735 (2017), and argues that there is no independent justification for the apartment search, such as exigent circumstances.[2]

The circuit court held and the Commonwealth maintains that the plain language and purpose of Code § 19.2-54 is to provide sufficient notice to the defendant of the basis for the issuance of the search warrant. In support, the Commonwealth relies upon our Supreme Court's rationale in Quintana v. Commonwealth, 224 Va. 127, 295 S.E.2d 643 (1982).[3] The Commonwealth argues that, similar to Quintana, the magistrate's failure in this case was cured by Investigator Rochard's live testimony at the suppression hearing where he was subjected to cross-examination regarding the contents of the probable cause affidavit. Based on the record before us, we agree with the Commonwealth that the rationale in Quintana is controlling, but for somewhat different reasons.

Although not cited by the Commonwealth, this Court in Lockhart v. Commonwealth, 34 Va. App. 329, 542 S.E.2d 1 (2001), held that "the Supreme Court in Quintana, in addressing the certification requirement of Code § 19.2-54, gave greater weight to the achievement of the notice-based purpose of the statute than to a strict, technical reading of the statute." Id. at 338, 542 S.E.2d at 5. Thereafter, this Court in Lockhart determined that "the same reasoning applies

---

[2] Our Supreme Court reversed this Court's decision in Campbell after Daniels was convicted and sentenced. See Commonwealth v. Campbell, 294 Va. 486, 807 S.E.2d 735 (2017). In any event, we conclude that Campbell has no bearing on the analysis of the issue here for the reasons stated.

[3] The General Assembly has amended Code § 19.2-54 several times since the Quintana decision in 1982.

to the filing requirement of Code § 19.2-54." Id. The purpose of Code § 19.2-54's filing requirement, like the certification requirement, "'is to give the defendant reasonable opportunity to determine that the affidavit on file is the same one upon which the determination of probable cause was based.'" Id. (quoting Robertson v. Rogers, 2 Va. App. 503, 507, 346 S.E.2d 41, 44 (1986)).

Code § 19.2-54 is a not a penal statute that must be construed strictly against the Commonwealth. See Coffman v. Commonwealth, 67 Va. App. 163, 170 n.6, 795 S.E.2d 178, 181 n.6 (2017) (defining what a penal statute is for purpose of applying the rule of lenity). Rather, it is purely procedural in nature.[4] Here, as in Lockhart, although the affidavit was delivered to the circuit court by the officer who executed the search warrant rather than by the magistrate who issued it, the notice-based purpose of Code § 19.2-54 was achieved. Further, Daniels has not pointed to any prejudice he suffered as a result of the affidavit not having been filed by the magistrate. Therefore, we hold that the circuit court did not err in denying Daniels' motion to suppress evidence obtained from the apartment search.

## C. The Vehicle Search

In his second assignment of error, Daniels argues that the circuit court erred in denying his motion to suppress the seizure of the suspected heroin from the vehicle because it erroneously relied upon the plain view exception to the warrant requirement to justify the vehicle search. Specifically, Daniels argues that the package containing the heroin viewed through the window of the car by Investigator Rochard was not immediately obvious as contraband and, as a result, is not subject to the plain view doctrine. In support, Daniels points to photographs of the

_____

[4] Although the record before us is silent with respect to whether or not Investigator Rochard was acting on behalf of the magistrate as a "designee or agent," the fact that the statute permits another to perform the filing requirement on the judicial officer's behalf indicates that the intent of the General Assembly is fulfilled by a timely filing of the affidavit irrespective of the identity of the filer.

heroin allegedly "show[ing] no distinctive red marking." Daniels argues that the photographs contradict Investigator Rochard's testimony that he viewed a red stamp on the packaging. Daniels also cites multiple cases from this Court and our Supreme Court to argue that the suspected heroin, as originally viewed by Investigator Rochard, did not provide the requisite probable cause to conduct a warrantless search.

Although not raised in the circuit court or in the initial briefing to this Court by either party, following supplemental briefing on appeal, we conclude that the issue of Daniels' standing to assert a Fourth Amendment interest is insufficiently addressed in the record. Therefore, for the purposes of this appeal, we will assume without deciding that Daniels has standing to assert a Fourth Amendment challenge to the search of Burton's vehicle, and we review *de novo* the merits of the circuit court's legal conclusion that the evidence seized from Burton's vehicle was justified by the "plain view" doctrine.

"The theory of the plain view doctrine is that an individual has no reasonable expectation of privacy in items that are in plain view." Commonwealth v. Thornton, 24 Va. App. 478, 483, 483 S.E.2d 487, 489 (1997) (quoting Arnold v. Commonwealth, 17 Va. App. 313, 318, 437 S.E.2d 235, 238 (1993)). The United States Supreme Court has established three requirements that must be met before the plain view doctrine applies: "1) that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, 2) that the incriminating character of the evidence must be immediately apparent, and 3) that the officer have a lawful right of access to the object itself." Cauls v. Commonwealth, 55 Va. App. 90, 99, 683 S.E.2d 847, 851 (2009) (quoting Vaughn v. Commonwealth, 53 Va. App. 643, 648, 674 S.E.2d 558, 560 (2009)). Further, if "the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—i.e., 'if its incriminating character [is not] immediately apparent,' . . . the plain-view doctrine cannot justify

its seizure." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993) (quoting Horton v. California, 496 U.S. 128, 136 (1990)) (emphasis omitted).

Here, the warrantless seizure of the contraband observed in the vehicle was supported by probable cause developed pursuant to the plain view exception to the warrant requirement. First, Investigator Rochard was lawfully in a place from which the bundle of heroin could be viewed. Investigator Rochard stood outside of the vehicle, looking inside. He did so without manipulating the vehicle. Second, Investigator Rochard immediately recognized that the bundle was contraband based upon his years of training and experience, as well as through his investigation into a heroin overdose at the time. While Investigator Rochard could not immediately see the word "Miracle," he testified that he could see a red stamp on the wax paper. Investigator Rochard had reliable information from an informant that Daniels was selling heroin in wax paper bags with red stamps. Further, Investigator Rochard had personally viewed Daniels sitting in the passenger seat of the vehicle. Based upon all of these circumstances, we hold that Investigator Rochard had probable cause to seize the contraband observed inside the vehicle. Therefore, the circuit court appropriately applied the plain view doctrine to deny Daniels' motion to suppress the evidence seized from Burton's vehicle.

### D. Daniels' Inculpatory Statements

In his third and final assignment of error, Daniels argues that the circuit court erred in denying his motion to suppress his inculpatory statements because they were "derived from an illegal search." Generally citing to this Court's decision in Middlebrooks v. Commonwealth, 52 Va. App. 469, 664 S.E.2d 499 (2008), Daniels argues that "fruit of the poisonous tree" must be suppressed. Daniels then notes that the circuit court "ruled that the search was permissible; therefore, the [circuit] court did not reach the question of whether the statements would have

been admissible if the search were unconstitutional." However, Daniels offers little more than argument in support of his assignment of error.

As discussed above, Investigator Rochard had probable cause to conduct a warrantless search of the vehicle. Further, to the extent that Daniels attempts to bootstrap his "fruit of the poisonous tree" position onto the magistrate's failure to personally file the affidavit in the circuit court, this argument also fails. There is no evidence of constitutional misconduct in obtaining and executing the search warrant by the police officers in this case. Moreover, the remedy for any material violation of the statutory requirements of Code § 19.2-54 is limited to the sanction provided by the statute itself. There is no "fruit of the poisonous tree" application to any statutory sanction unless it is specified by the statute itself. See Virginia v. Moore, 553 U.S. 164, 174 (2008) ("A State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional.").

Daniels only made the inculpatory statements after being arrested and advised of his Miranda rights. Therefore, the circuit court properly denied Daniels' motion to suppress them.

### III. CONCLUSION

For the foregoing reasons, we hold that the circuit court did not err in denying Daniels' motions to suppress. Accordingly, Daniels' conviction is affirmed.

Affirmed.