UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Malveaux and White
Argued at Norfolk, Virginia

KURUPT MAHDI

                                          MEMORANDUM OPINION[*] BY
v.       Record No. 0545-23-1          JUDGE KIMBERLEY SLAYTON WHITE
                                                JUNE 4, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge[1]

J. Barry McCracken, Assistant Public Defender, for appellant.

Jessica M. Bradley, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a bench trial, the trial court convicted Kurupt Mahdi of possessing a stun weapon

after conviction of a felony and eluding the police, in violation of Code §§ 18.2-308.2(A) and

46.2-817(A). The trial court sentenced Mahdi to two years and six months of imprisonment with

one year and six months suspended. Mahdi argues that the trial court erred in denying his motion to

suppress the evidence because the police lacked probable cause to search his vehicle without a

warrant. We find no trial court error and affirm the judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Tasha D. Scott ruled on Mahdi's motion to suppress the evidence, which is the
subject of this appeal. Judge Mary Jane Hall presided at Mahdi's trial and sentencing.

(2016)). In doing so, we discard any of Mahdi's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473. "When considering whether to affirm the denial of a pretrial suppression motion, an appellate court reviews not only the evidence presented at the pretrial hearing but also the evidence later presented at trial." *Commonwealth v. White*, 293 Va. 411, 414 (2017).

While on patrol on March 24, 2022, Norfolk Police Officers Labat and Martinson learned of an active felony arrest warrant for Mahdi, who was the registered owner of a black Nissan that they saw stopped on the street. They learned of this arrest warrant by running the tags of the Nissan while it was parked. Officer Labat turned his police vehicle around, stopped behind the Nissan, and activated his emergency lights. As he walked toward the Nissan, Officer Labat saw Mahdi, whom the officer recognized from a Department of Motor Vehicles photograph, in the driver's seat. Before Officer Labat reached the driver's door of the car, however, Mahdi sped away. Officer Labat returned to his police unit and pursued Mahdi. During the pursuit, a front seat passenger jumped out of Mahdi's moving car and fled on foot.

After a short distance, Mahdi lost control of the car and it stopped in a grassy area beyond the curb on the sidewalk. After Mahdi got out of the car while it was still running and closed the driver's door, the officers handcuffed Mahdi and advised him that there was a warrant for his arrest. Mahdi informed the officers that the car was not in park. While his partner kept Mahdi in physical custody, Officer Labat opened the driver's door of the Nissan, then manipulated the gear shift, placed the car in park, and turned off the ignition. Officer Labat then left the inside of the car. A short time later, Officer Labat shone his flashlight through the open passenger side window. On the front passenger seat, Officer Labat saw an orange or red glassine baggie containing small pieces of an off-white rock-like substance that he believed to be crack cocaine.

Officer Labat testified that he believed the substance was crack cocaine as a result of his training and experience. Through his radio, Officer Labat alerted police dispatch to the presence of suspected narcotics in the car.

Officer Labat decided to search the car based upon his training and experience. He stated that "when you see narcotics inside the vehicle, especially when somebody runs, there's likely to be more narcotics in the vehicle." Officer Labat also concluded that Mahdi's car must be towed and impounded since no other driver was available to move it and the car was illegally parked over the curb.

Officer Labat returned to his police car and confirmed the validity of the warrant for Mahdi's arrest. Officer Labat then searched Mahdi's car. In the center console the officer found several baggies of suspected marijuana and a blue Vipertek stun weapon. The suspected narcotics were not retrieved until Labat was conducting his thorough search of the vehicle in which he found the "stun weapon" which was the basis for the felony conviction giving rise to this appeal. There was also a concealed machete found in the back seat of the vehicle. Officer Labat did not recall completing an inventory form as required by police department policy for a search preceding impoundment of a vehicle.

The officer authenticated a short portion of a video as being from his body camera that recorded the events starting from the point of the initial decision to approach Mahdi's vehicle; the Commonwealth placed the first portion, approximately 4 minutes and 10 seconds, of a 14-minute video into evidence. The video did not depict the subsequent search of the vehicle that led to the discovery of the items sought to be suppressed.

Mahdi filed a motion to suppress on September 16, 2022, which the court denied. While the court did find that Officer Labat did not conduct a valid inventory search,[2] it denied the motion to suppress based on the "plain view doctrine." The court explained:

> It appears from the testimony from the officer as well as the behavior shown on the video [–] the immediate calling it in as a code of 174 [–] that . . . the officer believed [it] to be, suspected [it] to be narcotics[;] it was apparent from the video. And as we know with plain view, there's no expectation of privacy in items that are in plain view.
>
> And that did happen. He didn't manipulate the car door or anything else as seen by the Court in the video in order to get a view of the baggie that he believed had suspected narcotics.

Denying Mahdi's motion to suppress, the trial court found that Officer Labat observed the suspected drugs in plain view in Mahdi's car, thus providing the police with probable cause to search the vehicle. The trial court convicted Mahdi of possessing the stun weapon after conviction of a felony, carrying a sentence of two years of incarceration with one year suspended, and eluding the police.[3] This appeal followed.

## ANALYSIS

Mahdi maintains that the police violated his Fourth Amendment rights when they searched his vehicle and discovered the stun weapon.[4] "On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth." *Jones v. Commonwealth*, 71 Va. App. 375, 380 (2019) (quoting *Carlson v. Commonwealth*, 69 Va. App. 749, 757 (2019)). "[W]hen a defendant challenges the denial of a motion to suppress, he has the burden to show that the trial court's ruling constituted reversible error." *Adams v.*

---

[2] The inventory search was found invalid because Officer Labat did not complete a Form 924 as required by the police department's policies.

[3] On appeal, Mahdi does not challenge his conviction of eluding the police.

[4] Mahdi does not argue that the stop of his vehicle violated his Fourth Amendment rights.

- 4 -

*Commonwealth*, 48 Va. App. 737, 745 (2006). "Since the constitutionality of a search and seizure under the Fourth Amendment involves questions of law and fact, we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." *Jackson v. Commonwealth*, 267 Va. 666, 672 (2004).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment prohibits only unreasonable searches and seizures." *Thompson v. Commonwealth*, 54 Va. App. 1, 7 (2009) (quoting *James v. Commonwealth*, 22 Va. App. 740, 745 (1996)). "Warrantless searches, of course, are *per se* unreasonable, subject to a few well-defined exceptions." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (quoting *Abell v. Commonwealth*, 221 Va. 607, 612 (1980)). These "well-defined exceptions" include (1) consent, (2) search incident to lawful arrest, (3) plain view, and (4) exigent circumstances. *Collins v. Commonwealth*, 292 Va. 486, 497 (2016).

The Supreme Court of the United States has repeatedly "held that the search of an automobile can be reasonable without a warrant." *Collins v. Virginia*, 584 U.S. 586, 601 (2018). As a result, given "the impracticability of securing a warrant in cases involving the transportation of contraband goods," the Supreme Court has held that a warrantless search of an automobile supported by probable cause does not violate the Fourth Amendment. *United States v. Ross*, 456 U.S. 798, 806 (1982); *see also California v. Acevedo*, 500 U.S. 565, 580 (1991) (the police may search a vehicle, and containers within it, without a warrant if they have probable cause to believe the vehicle contains contraband). "The right to search and the validity of the seizure . . . are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *Chambers v. Maroney*, 399 U.S. 42, 49 (1970) (quoting

*Carroll v. United States*, 267 U.S. 132, 158-59 (1925)). Simply stated, under the "automobile exception," an officer may search a vehicle without first obtaining a warrant authorizing the search when there is probable cause to believe that the vehicle contains evidence of criminal activity. *Arizona v. Gant*, 556 U.S. 332, 347 (2009). The test is whether the officer conducting the search had probable cause under the totality of the circumstances, including the "officer's knowledge, training and experience." *Cost v. Commonwealth*, 275 Va. 246, 251 (2008).

Probable cause, "as the very name implies, deals with probabilities." *Slayton v. Commonwealth*, 41 Va. App. 101, 105 (2003) (quoting *Derr v. Commonwealth*, 242 Va. 413, 421 (1991)). It does not "demand any showing that such a belief be correct or more likely true than false." *Id.* at 106 (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). The "very phrase 'probable cause' confirms that the Fourth Amendment does not demand all possible precision." *Herring v. United States*, 555 U.S. 135, 139 (2009). "Perhaps the best that can be said generally about the required knowledge component of probable cause for a law enforcement officer's evidence search is that it raises a 'fair probability' or a 'substantial chance' of discovering evidence of criminal activity." *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 371 (2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 244 n.13 (1983)).

"The theory of the plain view doctrine is that an individual has no reasonable expectation of privacy in items that are in plain view." *Daniels v. Commonwealth*, 69 Va. App. 422, 435 (2018) (quoting *Commonwealth v. Thornton*, 24 Va. App. 478, 483 (1997)). Thus, "police observation of objects in plain view does not implicate the Fourth Amendment so long as the police are legitimately in the place where they viewed the objects." *Gibson v. Commonwealth*, 50 Va. App. 744, 749 (2007). In order for a seizure to be permissible under the plain view doctrine, two requirements must be met: "(a) the officer must be lawfully in a position to view and seize the item, [and] (b) it must be immediately apparent to the officer that the item is

evidence of a crime, contraband, or otherwise subject to seizure." *Conway v. Commonwealth*, 12 Va. App. 711, 718 (1991). Moreover, "[t]he use of [a] flashlight d[oes] not preclude the application of the 'plain view' doctrine." *Derr v. Commonwealth*, 6 Va. App. 215, 222 (1988) (quoting *Effler v. Rose*, 535 F.2d 980, 981 (6th Cir. 1984)). If a police officer does nothing more than use a flashlight to "illuminate what [the defendant] exposed to plain view," *Gibson*, 50 Va. App. at 753, the use of the light does "not change the plain view nature of the discovery," *id.* at 754 (quoting *People v. Clark*, 261 Cal. Rptr 181, 183 (Cal. Ct. App. 1989)). And when the police lawfully observe what they believe to be a controlled substance in plain view inside a vehicle, they possess probable cause to search the car. *See Fox v. Commonwealth*, 213 Va. 97, 100 (1972).

"[P]olice observation of objects in plain view does not implicate the Fourth Amendment so long as the police are legitimately in the place where they viewed the objects." *Gibson*, 50 Va. App. at 749 (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). Here, Officer Labat walked up to the Nissan's passenger side, looked through the partially open window with his flashlight, and immediately saw a bag of suspected crack cocaine in the front passenger seat. Officer Labat did not touch the car to see it, but merely looked through the ajar window. "This did not constitute a search but a simple observation by the officer of that which was open to plain view." *Fox*, 213 Va. at 100 (citing *Miller v. United States*, 356 F.2d 63 (5th Cir. 1966)).

After stopping Mahdi's vehicle and interacting with him, Officer Labat reached into the car to turn off the engine, but he did not remain within the car nor search the car. Officer Labat later, while standing outside of the car, shone his flashlight through an open window into the front passenger seat. These actions did not infringe upon Mahdi's Fourth Amendment rights. *See Gibson*, 50 Va. App. at 753. On the front passenger seat, in plain view, Officer Labat saw a glassine bag containing a white rock-like substance. Mahdi argues that this was a mere

suspicion, but probable cause analysis is based on an officer's experience and training. Officer Labat, in the record, testified that he believed the substance to be crack cocaine because of this training and experience.

The discovery of what Officer Labat suspected to be crack cocaine was merely a factor in the equation that amounts to probable cause. Mahdi had fled from the officers, his passenger had bailed out of the car during the chase, Mahdi himself left the car running, and there was an active warrant out for his arrest. When looking at the totality of the circumstances presented to Officer Labat, there was a "fair probability" or a "substantial chance" of discovering evidence of criminal activity if he searched the vehicle. *Safford Unified Sch. Dist. #1*, 557 U.S. at 371 (quoting *Gates*, 462 U.S. at 238, 244 n.13). The discovery and subsequent seizure of the suspected drugs was not the standalone cause of the search of the vehicle, but merely a factor in a greater analysis. For these reasons, Officer Labat was justified in searching the car without a warrant. "If there is probable cause to believe a vehicle contains" contraband, officers may search "any area of the vehicle in which the [contraband] might be found." *Arizona v. Gant*, 556 U.S. 332, 347 (2009). The officer discovered the stun weapon during the course of that lawful search. Because the police lawfully searched Mahdi's car and seized the stun weapon, the trial court did not err in denying the motion to suppress.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed*

- 8 -