COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges O'Brien, Fulton and White
Argued at Buckingham, Virginia


ROBERT HARRISON FLINT

                                                        OPINION BY
v.        Record No. 0860-24-2           JUDGE MARY GRACE O'BRIEN
                                                        JULY 22, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Meghan Shapiro (Virginia Indigent Defense Commission, on briefs),
for appellant.

Allison M. Mentch, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


In 2021, Robert Harrison Flint's license to hunt was revoked for five years. After pictures

of him posing with dead deer surfaced, conservation police officers with the Department of Wildlife

Resources of the Commonwealth of Virginia (Department) obtained a search warrant for his

residence, where they found ammunition and cocaine. Flint was charged with possession of

ammunition as a convicted felon and possession of cocaine, and he filed two motions to suppress

the evidence seized during the search. The court denied both motions. Flint subsequently entered a

conditional guilty plea. On appeal, he argues that the court erred in denying his motions.

                                    BACKGROUND

In 2021, Flint was convicted of possessing ammunition as a felon, and the court revoked his

hunting license for five years. In 2022, Gregory Todd Goff, Jr., a conservation police officer with

the Department, received several photographs from a confidential informant, showing Flint "posing

with dead deer." In one picture, Flint is "sitting on the end of a tailgate holding a deer by the antlers

with a crossbow by his side, and the crossbow bolt in his teeth while [he] is covered in blood." Officer Goff subsequently searched Flint's name in the Department's computer system, which produced the following result: "Revocation – Hunt (Expires 10/14/26)." The officer also conducted a "link search and gained Mr. Flint's criminal history." Because it was not the Department's procedure to examine underlying court orders, he did not obtain a copy of the actual order revoking Flint's hunting license.

Officer Goff applied for a search warrant of Flint's residence and drafted the accompanying affidavit based on the photographs and his investigation. The magistrate issued a warrant for the following offenses: "[Code §] 29.1-338 (Hunt/trap/fish while revoked), [Code §] 29.1-521 (Illegal possession of wildlife), [Code §] 29.1-548 (Kill deer illegally)." When the search warrant was executed on November 23, 2022, the officers discovered firearm ammunition and cocaine in Flint's bedroom. Flint was charged with one count of possession of ammunition by a convicted felon under Code § 18.2-308.2 and one count of possession of a controlled substance under Code § 18.2-250.

On November 28, 2022, Officer Goff gave a deputy clerk of the Albemarle Circuit Court clerk's office the original search warrant, accompanying affidavit, and search inventory and return. The deputy clerk checked a box on the search inventory and return indicating it was received "in person . . . on 11/28/22." The deputy clerk then gave Officer Goff a "certified copy of the search warrant and return," which bore a stamp stating: "FILED 2022 Nov 28 AM 11:44." The clerk also provided him with a copy of the affidavit, which was clipped to the certified copy of the warrant.

Flint moved to suppress the evidence seized from his residence under Code § 19.2-54 because the affidavit accompanying the search warrant was missing from the clerk's office. According to the motion, defense counsel requested copies of the search warrant and affidavit on

two occasions; on both dates, "the clerk's office informed defense counsel that there was no search warrant, affidavit, or return on file."

At the motion hearing, the parties agreed that the search warrant and affidavit could not be located in the Albemarle Circuit Court clerk's office. Officer Goff testified that he had filed the original search warrant and affidavit in the clerk's office, and he had a copy of the affidavit, which was admitted into evidence. The court also admitted Officer Goff's certified copies of the search warrant and the related search inventory and return. Flint argued that the evidence seized during the search should be suppressed because (1) Officer Goff, not the magistrate as required by the statute, filed the affidavit and (2) the "basic purpose of th[e] statute . . . wasn't fulfilled here" because the affidavit was not made publicly available.

The court denied Flint's motion, finding that "a document is filed when it is delivered or placed among official records to the proper officer and received by the officer, in this case the clerk of the court." The court ruled that "[t]he evidence submitted show[ed] that the document was properly filed in the clerk's office," noting that the copies were stamped and signed as received by the clerk's office. Further, Flint had "not pointed to any prejudice that he suffered as a result of the affidavit not being filed by the magistrate."

Flint filed a second motion to suppress, arguing the evidence should be suppressed under Code § 19.2-54 not only because the affidavit was missing from the clerk's office but also because he did not have a legible version of the affidavit and therefore could not "adequately challenge its contents." He also raised a *Franks*[1] claim under the Fourth Amendment, alleging that the warrant's affidavit "contained a false assertion . . . made with reckless disregard for the truth, without which

---

[1] The claim is named after the seminal case *Franks v. Delaware*, 438 U.S. 154 (1978), which established a defendant's right to challenge a facially valid warrant when the affidavit intentionally or recklessly contains false statements. *See Barnes v. Commonwealth*, 279 Va. 22, 30 (2010).

the affidavit could not have established probable cause for any offense."[2]  That challenged statement was that Flint's hunting license and privilege had been revoked, when in fact only his license was revoked.  He argued that the distinction was significant because under Code § 29.1-301 he was still allowed to hunt on his family's land, regardless of the status of his license.  Code § 29.1-300 provides that it is "unlawful to hunt, trap or fish in or on the lands . . . of this Commonwealth without first obtaining a license."  But Code § 29.1-301(A) allows landowners and their children to hunt "within the boundaries of their own lands" without a license.  This means a person may retain the *privilege* to hunt on their family's land even when their hunting *license* is revoked.

During the motion hearing, the Commonwealth acknowledged that the officer was mistaken when he wrote that Flint had lost both his hunting license and privilege.  Officer Goff testified that he followed Department procedure when he retrieved only Flint's criminal record, not the underlying court order.  He explained that his duties included "investigat[ing] potential hunting violations" and he believed Flint had lost both his license and privilege to hunt after conducting his search of the Department's computer system.  Officer Goff denied having any malicious intent or trying to purposefully mislead the magistrate in the affidavit.

Flint's mother testified that Flint had permission to hunt on her property in Albemarle County.  Myesha Wilson, an investigator with the public defender's office, stated that when she discovered the clerk's office did not have a copy of the search warrant and affidavit, Officer Goff provided her with a copy.  She said she was unable to read the affidavit.  Flint argued that the evidence should be suppressed because the affidavit was illegible.  Further, the warrant was lacking probable cause because, contrary to the statement in the affidavit, he still had his hunting privilege

---

[2] In his motion, Flint argued that he based his *Franks* motion not on the affidavit itself but on "analogous statements in [Officer] Goff's police report" and on Officer Goff's own testimony regarding the warrant's content.

and was allowed to hunt on his family's land. He further contended that Officer Goff's statement was made with reckless disregard for the truth.

The court "disagree[d] entirely with [Flint's] proposition that the statement was made with reckless disregard to the truth." The court further stated the following:

> The [c]ourt cannot find that the warrant is illegible or not readable, and as a result not subject to challenge by defendant. In fact, defendant has challenged the substance of the warrant. . . . That leaves the [c]ourt with the question where . . . hunting privileges were not generally revoked and he was legally permitted to hunt on his own land. There isn't any evidence contained in the search warrant that that was a consideration, nor was Officer Goff required to consider whether or not the hunting took place on his own land, or his mother's land, or other places for it to be done lawfully. Based on the information contained in the database that Officer Goff queried, [it] provided sufficient basis for Officer Goff to proceed with probable cause statements made in the affidavit.

The court also noted that probable cause exists regardless of any affirmative defenses. Denying Flint's second motion to suppress, the court concluded that "[h]ere, someone who's [sic] hunting privileges were revoked until 2026, having shown evidence publicly that he was out hunting, provides probable cause for Officer Goff to go forward and ask questions about and investigate and ask for a search warrant in this matter."

Flint subsequently entered a conditional guilty plea for both charges and was sentenced to six years' incarceration with "all but four months" suspended.

ANALYSIS

I. Standard of Review

"In reviewing the denial of a motion to suppress, we 'consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)). "It is the appellant's burden to show that when viewing the evidence in such a manner, the trial court committed reversible error." *Id.* (quoting *Hairston*, 67 Va. App. at 560). "This Court is 'bound by

the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" *Daniels v. Commonwealth*, 69 Va. App. 422, 431 (2018) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). But "an appellant's 'claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal.'" *Id.* (quoting *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018)).

## II. Motion to Suppress under Code § 19.2-54

Flint argues that the court erred in denying his motion to suppress because Code § 19.2-54 "designat[es] suppression as the remedy if there is a 'failure' to file the affidavit within 30 days." According to Flint, the statute was violated because (1) "the affidavit was missing from the clerk's file . . . until long past the 30-day marker"; (2) "the affiant agent—not the issuing magistrate—filed the affidavit with the clerk"; and (3) "the affiant[ ]agent produced a copy of the affidavit, which . . . was illegible, preventing the meaningful review of its content that [Code §] 19.2-54 safeguards." Flint contends that suppression is necessary to fulfill the statute's "notice-based purpose."

Code § 19.2-54 establishes content requirements for the affidavit that supports a search warrant. It further provides as follows:

> Such affidavit shall be certified by the officer who issues such warrant and delivered . . . by such officer or his designee or agent, to the clerk of the circuit court of the county or city wherein the search is made, within seven days after the issuance of such warrant and shall by such clerk be preserved as a record and shall at all times be subject to inspection by the public after the warrant that is the subject of the affidavit has been executed or 15 days after issuance of the warrant, whichever is earlier . . . . The term "affidavit" as used in this section, means statements made under oath or affirmation and preserved verbatim.
>
> *Failure of the officer issuing such warrant to file the required affidavit shall not invalidate any search made under the warrant unless such failure shall continue for a period of 30 days.* If the

> affidavit is filed prior to the expiration of the 30-day period, nevertheless, evidence obtained in any such search shall not be admissible until a reasonable time after the filing of the required affidavit.

Code § 19.2-54 (emphasis added).

Code § 19.2-54 was designed to further "Fourth Amendment purposes," and the purpose of the certification requirement of the statute "is to insure that the affidavit filed with the clerk for the information of the accused is the same affidavit upon which the finding of probable cause was based." *Quintana v. Commonwealth*, 224 Va. 127, 136 (1982). That is also "[t]he purpose of the [statute's] filing requirement." *Lockhart v. Commonwealth*, 34 Va. App. 329, 338 (2001).

We have previously noted that "Code § 19.2-54 is not a penal statute that must be construed strictly against the Commonwealth." *Daniels*, 69 Va. App. at 433. And neither this Court nor the Supreme Court has ever held that a violation of Code § 19.2-54 requires the exclusion of seized evidence. *Commonwealth v. Campbell*, 294 Va. 486, 493 n.1 (2017) (expressing "no opinion concerning the existence or scope of any suppression remedy under Code § 19.2-54").

Several cases address the requirements of Code § 19.2-54. In *Quintana*, the Supreme Court held that a magistrate's failure to certify the affidavit before filing it with the clerk's office did not require the suppression of evidence because "the affiant identified the challenged affidavit as the one he subscribed before the magistrate" and because the missing signature "caused defendant no prejudice." *Quintana*, 224 Va. at 136. Therefore, "the statutory purpose was fully served." *Id.*

In *Lockhart*, this Court determined that "the notice-based purpose of Code § 19.2-54 was achieved and [defendant] suffered no prejudice" when a special police officer, not the warrant-issuing magistrate, filed the affidavit with the clerk's office because "the supporting affidavit filed by [the police officer] was the same one he had subscribed before the magistrate" and "[t]he affidavit was on file in the clerk's office available for inspection . . . the day after the search warrant was issued." *Lockhart*, 34 Va. App. at 338. Similarly in *Daniels*, this Court found that

when the affiant investigator timely filed the required affidavit with the clerk's office and the defendant failed to identify any prejudice he suffered as a result of the investigator filing the affidavit, the notice-based purpose of the statute was fulfilled and the court did not err in denying defendant's motion to suppress. *Daniels*, 69 Va. App. at 434.

Here, like in *Lockhart* and *Daniels*, someone other than the warrant-issuing magistrate filed the affidavit with the clerk's office. But despite Flint's contention to the contrary, this alone does not violate Code § 19.2-54. *See Lockhart*, 34 Va. App. at 338 (finding no error when the police officer and not the magistrate filed the affidavit with the clerk's office because the notice-based purpose was fulfilled and defendant did not suffer any prejudice). The key is whether the notice-based purpose of the statute was fulfilled and whether Flint suffered prejudice.

The circumstances of this case are unique. Unlike in *Quintana*, *Lockhart*, and *Daniels*, the search warrant and affidavit here are missing entirely from the clerk's office. No version of the warrant affidavit is available at the office for inspection. But we do have Officer Goff's testimony that he gave a clerk at the Albemarle Circuit Court clerk's office the original search warrant and accompanying affidavit five days after the execution of the warrant. The record also contains a certified copy of that warrant and a copy of the affidavit, which Officer Goff received from the clerk. The search warrant bears a stamp on it, reading: "FILED 2022 Nov 28 AM 11:44," and it was clipped together with the affidavit. Officer Goff testified that the affidavit he filed with the clerk's office was the original on which the search warrant was based. He also provided a copy of the affidavit to the investigator for the public defender's office. Finally, Flint cross-examined Officer Goff about the affidavit's content. Under these circumstances, the court did not err in finding that Flint had sufficient information to determine that "the affidavit filed with the clerk . . . [wa]s the same affidavit upon which the finding of probable cause was based." *Quintana*, 224 Va. at 136.

- 8 -

Further, several of the cases concerning Code § 19.2-54 address a defendant's failure to show prejudice resulting from the alleged statutory violation. *See Quintana*, 224 Va. at 136 ("[T]he omission of the magistrate's signature in the [affidavit] caused defendant no prejudice . . . ."); *Lockhart*, 34 Va. App. at 338 ("[Defendant] suffered no prejudice as a result of the affidavit not having been filed by the magistrate."); *Daniels*, 69 Va. App. at 434 ("[Defendant] has not pointed to any prejudice he suffered as a result of the affidavit not having been filed by the magistrate.").

During oral argument, Flint contended he was prejudiced because the copy of the affidavit was "illegible." But during the suppression hearings, Flint cross-examined Officer Goff about the content of the affidavit. Further, the court made a factual finding that the copy of the affidavit was not "illegible or not readable." We are bound by this finding unless it was clearly erroneous. *See Daniels*, 69 Va. App. at 431. Flint contends that the court's finding was indeed clearly erroneous and points us to the copy of the affidavit in the record. But we do not engage in fact finding, and the court merely remarked that the copy was "somewhat difficult to read," not that it was illegible, and it later specifically stated that it "cannot find that the warrant is illegible or not readable." The court also highlighted that Flint was able to challenge the content of the affidavit.

Flint also posits that "[t]here is no independent legal requirement that a litigant prove prejudice when raising this claim on appeal" and that "the prejudice discussed in those cases[] is merely a component of the 'notice' analysis; if an accused is not prejudiced, that may be further indication that the notice-based purpose of [Code §] 19.2-54 was satisfied." We do not express an opinion regarding whether there is an independent requirement of prejudice because, even if Flint is correct and prejudice is only "a component of the 'notice' analysis," that contention does not

strengthen Flint's argument. Indeed, in Flint's own words, the fact that Flint did not suffer any prejudice[3] is "further indication that the notice-based purpose of [Code §] 19.2-54 was satisfied."

Because the notice-based purpose of the statute was fulfilled and Flint did not suffer any prejudice, we do not address whether Code § 19.2-54 requires suppression of evidence when the notice-based purpose is not fulfilled or whether a good faith exception permits the admission of the seized evidence.

### III. *Franks* Motion—Suppression under the Fourth Amendment

Flint argues that the search of his residence violated the Fourth Amendment because the affidavit contained the false statement that his hunting privilege was revoked and that statement was made "with reckless disregard rather than mere negligence." Without that statement, Flint contends, the affidavit did "not supply probable cause." According to Flint, Officer Goff failed to exercise due care when he did not conduct a follow-up investigation to determine whether Flint's license as well as his privilege to hunt was revoked because he knew "Flint's prior offense did not qualify for any mandatory revocation of his hunting privilege."

"The Fourth Amendment entitles a defendant to a hearing designed to challenge a facially valid search warrant only under limited circumstances." *Davis v. Commonwealth*, 65 Va. App. 485, 497 (2015). "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Thus, "[i]n order even to obtain an evidentiary hearing on the affidavit's integrity, a defendant must first make 'a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *Barnes v. Commonwealth*, 279 Va. 22, 31 (2010) (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)). "This

---

[3] Flint's alleged prejudice stems from his contention that the affidavit was illegible. But we are bound by the court's determination regarding legibility because it was not clearly erroneous or without evidence to support it. Flint did not allege any other prejudice.

showing 'must be more than conclusory' and must be accompanied by a detailed offer of proof."
*Id.* (quoting *Colkley*, 899 F.2d at 300). "Mere negligence in recording the facts relevant to a probable-cause determination is not enough." *Id.* at 32 (quoting *United States v. Photogrammetric Data Servs., Inc.*, 259 F.3d 229, 238 (4th Cir. 2001)).

Importantly, "before a circuit court conducts an evidentiary hearing, the court is required to 'set to one side' the alleged false or reckless information or omission and determine whether the warrant affidavit supports a finding of probable cause." *Id.* at 33 (quoting *Franks*, 438 U.S. at 156). "[P]robable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Jones v. Commonwealth*, 277 Va. 171, 178 (2009) (alteration in original) (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006)). A court determines probable cause based on "what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." *Barnes*, 279 Va. at 34 (quoting *Parker v. Commonwealth*, 255 Va. 96, 106 (1998)). But it "'does not "demand any showing"' that a police officer's belief regarding criminal activity be 'correct or more likely true than false.'" *Byrd v. Commonwealth*, 57 Va. App. 589, 595 (2011) (en banc) (quoting *Slayton v. Commonwealth*, 41 Va. App. 101, 106 (2003)).

Here, Flint alleges that the statement that both his hunting privilege and license—not only his license—were revoked was made with reckless disregard for the truth. Even setting this statement aside, the affidavit contains enough information to establish probable cause. The affidavit still states that Flint's hunting license was revoked. Virginia law provides that it is "unlawful to hunt, trap or fish in or on the lands . . . of this Commonwealth without first obtaining a license." Code § 29.1-300.

Flint argues that there was no probable cause because he was hunting on his family's land when the picture with the crossbow and a dead deer was taken. Code § 29.1-301(A) allows

landowners and their children to hunt "within the boundaries of their own lands" without a license. However, the officer had no indication that the picture was taken on Flint's family's land. Flint, whose hunting license was revoked, was posing with a dead deer and a crossbow on the bed of a truck. Officer Goff followed his training when he investigated that matter. Because probable cause "'does not "demand any showing"'" that a police officer's belief regarding criminal activity be 'correct or more likely true than false,'" it was reasonable for the court to conclude that there was probable cause that Flint was illegally hunting. *Byrd*, 57 Va. App. at 595 (quoting *Slayton*, 41 Va. App. at 106).

As Flint failed to make the threshold showing that the challenged statement was necessary to establish probable cause, we do not review the court's determination that the statement was not made with reckless disregard for the truth.[4] *See Barnes*, 279 Va. at 33 (explaining that a court first must set aside the alleged false statement to determine whether there was probable cause regardless of the statement and only then proceed to conduct a *Franks* hearing). The affidavit established probable cause even without the challenged statement, and the court therefore did not err in denying Flint's *Franks* motion.

CONCLUSION

Because the statutory notice-based purpose was fulfilled and because Flint did not make the required threshold showing of no probable cause without the challenged statement, we affirm the circuit court's denial of both motions to suppress.

*Affirmed.*

---

[4] We note that the court made a factual finding that Officer Goff's statements were not made with reckless disregard. Such factual findings will not be disturbed on appeal unless plainly wrong or unsupported by the evidence. *See West v. Commonwealth*, 16 Va. App. 679, 689 (1993) (stating that where the court found no intentional falsehoods or mistakes the "findings are not reversible unless plainly wrong or not supported by the evidence" (quoting *Moats v. Commonwealth*, 12 Va. App. 349, 355 (1991))).